CHARLES D. GAITHER, COMMISSIONER OF POLICE, *vs.*
HOWARD W. JACKSON, MAYOR, ET AL.

*Baltimore City—License Taxes—Local Laws—Home Rule
Amendment.*

Under Code Pub. Loc. Laws, art. 4, sec. 6, subsec. 14, Balti-
more City has power to impose license fees on businesses and
occupations, in order either to regulate them, or to produce
revenue.                                     pp. 664, 665

The Home Rule Amendment to the Constitution, although
empowering Baltimore City to repeal or amend local laws of
said city enacted by the General Assembly, does not authorize it
by ordinance to repeal a law providing for the appointment by
the Governor of auctioneers in the city and for the payment
by the auctioneers of license fees and duties to the State.
                                            pp. 665-667

A statute is not a local law merely because it was enacted as
such, and was published in the Code of Public Local Laws.
                                                    p. 666

A law is not a local law because its operation is confined to
Baltimore City or to a single county, if it affects the interests
of the people of the whole State, as by providing revenue for
the State.                                         p. 667

*Decided April 8th, 1925.*

Appeal from the Superior Court of Baltimore City
(STEIN, J.).

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

Petition for mandamus by Howard W. Jackson, Mayor
of Baltimore City, and others, against Charles D. Gaither,
Commissioner of Police. From an order for the issuance of
the writ, said respondent appeals. *Reversed.*

*Thomas H. Robinson, Attorney General,* and *Edward H. Burke, Assistant Attorney General,* for the appellant.

*Philip B. Perlman, City Solicitor,* and *Wirt A. Duvall, Jr., Deputy City Solicitor,* for the appellee.

Adkins, J., delivered the opinion of the Court.

This suit was instituted in the Superior Court of Baltimore City by a petition for mandamus by the board of estimates of the Mayor and City Council of Baltimore against the Commissioner of Police.

The petition is as follows:

The petition of Howard W. Jackson, mayor; R. Walter Graham, comptroller; Howard Bryant, president of the city council; Bernard L. Crozier, highways engineer, and Philip B. Perlman, city solicitor, constituting the board of estimates of the Mayor and City Council of Baltimore, all of whom are residents in and taxpayers of the City of Baltimore, suing on behalf of themselves and any other taxpayers of the said City of Baltimore who may desire to become parties hereto, respectfully represents unto your Honor:

First—That section 3 of article 11 of the Constitution of Maryland provides that from and after the adoption of a charter by the City of Baltimore, the mayor of Baltimore and the city council of the City of Baltimore, subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said city, including the power to repeal or amend local laws of said city enacted by the General Assembly, upon all matters covered by the express powers granted as provided in said section and article of the Constitution; that a charter in accordance with the provisions of article 11-A of the Constitution of Maryland, was adopted by the voters of the City of Baltimore at the general election held in the month of November, 1918; that among the powers granted to the City of Baltimore, and referred to in section 2 of article 11-A of the Constitution of

Maryland, as set forth in section 6 of article 4 of the Public Local Laws of Maryland, are those set out in subsection 14 of said section 6 of artcile 4 of the Public Local Laws of Maryland, caption "Licenses":

"To license, tax and regulate all businesses, trades, avocations or professions. To license, regulate, tax or suppress hawkers, peddlers, brokers, pawnbrokers, intelligence officers, street exhibitions or fortune-tellers"; and those set out in subsection 18 of said section 6 of the said article:

"To pass ordinances for preserving order, and securing property and persons from violence, danger and destruction, protecting the public and city property, rights and privileges from waste or encroachment, and for promoting the great interest and insuring the good government of the city. To have and exercise within the limits of the City of Baltimore all the power commonly known as the police power to the same extent as the State has or could exercise said power within said limits. * * * "

That before the adoption of said charter there were in force in the City of Baltimore certain local laws enacted by the General Assembly with respect to auctions and auctioneers, said Acts of the General Assembly being codified as sections 235 to 278 inclusive of article 4 of the Code of Public Local Laws of Maryland; and that a charter having been adopted by the voters of the City of Baltimore the mayor of Baltimore and the city council of the City of Baltimore were clothed with full power to repeal or amend the provisions of said local laws in force in the City of Baltimore with respect to auctions and auctioneers.

Second—That on the 15th day of February, 1924, Ordinance No. 105, having been duly passed by the city council of Baltimore, was regularly approved by the mayor of the City of Baltimore, and thereby became a law binding upon all persons within the limits of Baltimore City. A certified copy of said ordinance is attached hereto marked "Petitioner's Exhibit No. 1" and prayed to be taken as a part hereof. The said ordinance repealed scetions 235, 236, 237, 238, 266,

267, 268, 269, 270, 274, 275, 276, and 277 of article 4 of the Code of Public Local Laws of Maryland (Revised Edition of 1915), title "City of Baltimore," sub-title "Auctions," and repealed and reordained with amendments sections 239, 240, 241, 243, 244, 245, 246, 248, 249, 253, 255, 257, 263 and 272 of said article 4 to be effective in connection with sections 242, 247, 250, 251, 252, 256, 258, 259½, 264, 265, 271, 273 and 278 of said article 4, which have not been repealed and are now in full force and effect.

Third—That Charles D. Gaither is police commissioner for the City of Baltimore, having been appointed under and by virtue of chapter 559 of the Acts of 1920, which act provided that he should have and exercise all of the powers prior to that time vested in the Board of Police Commissioners; that by section 744 of article 4 of the Public Local Laws of Maryland it was the duty of the board of police commissioners to enforce all laws and ordinances of the Mayor and City Council of Baltimore not inconsistent with the provisions of the said section or any law of the State which may be properly enforced by the police force, and that this duty has now developed upon the said Charles D. Gaither as police commissioner for the City of Baltimore.

Fourth—That said Ordinance No. 105 is being constantly violated by persons who have conducted auction sales, and who still continue to conduct auction sales without first having complied with the terms of the said ordinance; that your petitioners have complained to the said Charles D. Gaither of these violations and of threatened violations in a letter dated the 15th day of July, 1924, a copy of the said letter being attached hereto marked "Petitioners' Exhibit No. 2" and prayed to be taken as a part hereof; that the said Charles D. Gaither has refused, and continues to refuse, to enforce the said ordinance, and on the 16th day of July, 1924, replied to the said letter stating that he would take no action whatsoever in the premises, a copy of the said reply being attached

hereto marked "Petitioners' Exhibit No. 3" and prayed
to be taken as a part hereof.

Fifth—That by reason of the refusal of the said
Charles D. Gaither, police commissioner, to enforce
said Ordinance No. 105, no person has applied for an
auctioneer's license under said ordinance, and the
Mayor and City Council of Baltimore is, therefore,
deprived of a substantial amount of revenue from
the license fees which are required to be paid to it
under the terms of the said ordinance; that the said
ordinance contains certain regulations affecting the
conduct of auctions which are not now being enforced,
and that your petitioners and all other taxpayers of
the City of Baltimore are greatly injured and dam-
aged thereby.

Wherefore, your petitioners pray that a writ of
mandamus may be issued directed to Charles D. Gai-
ther, police commissioner for Baltimore City, or to
whoever may be acting in his stead as police com-
missioner for Baltimore City, commanding him to
forthwith exercise the discretion vested in him and
take whatever steps he may deem proper to compel
the compliance by all persons in the City of Balti-
more with the terms of Ordinance No. 105, approved
the 15th day of February, 1924.

With the petition were filed, as exhibits, a certified copy
of the ordinance, a letter from the Mayor to the commis-
sioner of police, and a letter from the latter to the former in
reply.

The Mayor in his letter informs the commissioner that the
ordinance in question is being persistently violated by a
number of persons who are conducting auction sales without
having complied with the terms of the ordinance, and re-
quests that the commissioner take steps to prosecute such
violators.

The commissioner replying states that the Attorney Gen-
eral in a letter to the Governor has held the ordinance to be
invalid; he calls the Mayor's attention to the fact that he
has made no appointments by virtue of said ordinance and

concludes by stating positively that "I decline to take any
action whatsoever toward the arrest of the auctioneers ap-
pointed by the Governor who have qualified and who are now
conducting their business in Baltimore City, and I do not
consider said auctioneers liable to criminal prosecution, be-
cause on the advice of the Attorney General, I regard said
ordinance as a nullity."

Sections 235 to 238, inclusive, which were repealed by the
ordinance, related to the imposition of duties. It is stated.
in appellees' brief that this charge is no longer imposed,
but it does not appear why, or by what authority the col-
lection of these duties has been abandoned. Sections 266
to 270, inclusive, which were repealed by the ordinance,
relate to statements required to be made to the comptroller
in connection with the duties to be collected, the last men-
tioned section making it unlawful for the Governor to nomi-
nate to the Senate as auctioneer any person who shall not
have settled for all auction duties. Sections 274 to 277,
inclusive, which were repealed by the ordinance, relate to the
disposition of the proceeds of auctioneers' duties. It is said
in appellees' brief, and not controverted by appellant, that
all the sections relating to duties had become obsolete and
were no longer in force; but there is no evidence of this.

The sections amended are as follows:

Section 239 is amended by the ordinance so as to elimi-
nate the provisions relating to auction duties.

Section 240 is amended so as to transfer the power of
appointment from the Governor to the Mayor and so as to
increase the maximum number of auctioneers from thirty to
fifty.

Section 241 is amended so as to provide that the bond of
$5,000 shall be given to the Comptroller of the City of
Baltimore instead of the State Treasurer, and so as to require
the license fee to be paid to the collector of water rents and
licenses of Baltimore City instead of to the State Treasurer.
This section as amended requires the bond as security for the
proper conduct by the auctioneer in carrying out the provi-

sions of the law, and omits the condition as to the payment of the duties, which appears in this section of the statute.

Section 243 as amended substitutes city officials for state officials, and similar substitutions are made in sections 244, 245, 246, 248, 249, 253, 255, 257, 263 and 272.

On the filing of said petition and exhibits an order was passed requiring the defendant to show cause why the writ should not issue.

The answer of the respondent is as follows:

The answer of Charles D. Gaither, commissioner of police, to the petition filed against him in this court by Howard W. Jackson, mayor, *et al.,* in the above entitled case, and for cause why the writ of mandamus therein prayed should not issue, respectfully represents:

1. Answering the first paragraph of said petition your respondent refers to the Constitution and laws of the State of Maryland, to which reference is made in said first paragraph of said petition for a correct statement of what said Constitution and laws provide, and your respondent denies that by virtue of the adoption of its charter pursuant to article 11-A of the Constitution of Maryland the mayor of Baltimore and the city council of the City of Baltimore are clothed with full power to repeal or amend the provisions of the law in force in the City of Baltimore with respect to auctions and auctioneers.

2. Your respondent admits the passage of Ordinance No. 105 referred to in the second paragraph of said petition, and your respondent admits that the Petitioners' Exhibit No. 1 is a duly certified copy of said ordinance. But your respondent says that said Ordinance No. 105 is invalid and void.

3. Your respondent admits the matters and facts set forth in the third paragraph of said petition.

4. Your respondent admits the matters and facts stated in the fourth paragraph of said petition and again says that Ordinance No. 105 is invalid and void, and for this reason your respondent has refused and

now refuses to enforce the provisions of said ordinance.

5. Answering the fifth paragraph of said petition, your respondent admits that no person has applied for an auctioneer's license under said Ordinance No. 105, but says the reason that no applications have been made for licenses under· said ordinance is not the refusal of your respondent to enforce said ordinance, but the invalidity of said ordinance, and your respondent refers to said Ordinance No. 105 for a correct statement of what it contains.

6. Further answering said petition and each and every paragraph thereof, your respondent says that Ordinance No. 105 therein referred to, a correct copy of which is Petitioners' Exhibit No. 1, is invalid and void.

. 7. Your respondent further says, in answer to said petition and each and every paragraph thereof, that the Governor of Maryland, by and with the consent and advice of the Senate, appointed the following gentlemen auctioneers in Baltimore City. The dates of the issuance of their respective commissions being set opposite their names, respectively :

Nathan Small, April 28, 1924.
Abraham J. Billig, April 29, 1924.
Frank F. Meyers, April 29, 1924.
Sam W. Pattison, April 29, 1924.
Robert Fox, May 3, 1924.
Meyer M. Austin, May 14, 1924.
Joseph J. Baylin, May 31, 1924.
O. T. Butterworth, May 13, 1924.
Paul Caplan, May 7, 1924.
Vincent Di Giorgio, April 30, 1924.
Thos. C. W. Hobbs, April 29, 1924.
Morris Khantroff, June 16, 1924.
Samuel Libowitz, May 23, 1924.
Napoleon B. Lobe, May 9, 1924.
Harry A. Macy, May 28, 1924.
H. J. McCarthy, May 8, 1924.
E. T. Newell, May 13, 1924.
Samuel Siegel, April 30, 1924.

Philip G. Schwab, July 3, 1924.

S. A. Schwab, May 5, 1924.

Joel C. Zalis, April 30, 1924.

That said appointments were made and said commissions issued under and by virtue of chapter 350 of the Acts of 1894, codified as section 240 of the Baltimore City Charter (1915); that each and every of said gentlemen have received their commission as auctioneers in the City of Baltimore from the clerk of the Court of Common Pleas, and have paid therefor into the treasury of the State of Maryland their license fees, as required by law, and have duly qualified to conduct auction sales in Baltimore City. That no person or persons other than those mentioned above are conducting auction sales or carrying on the business of auctioneer in Baltimore City.

That at the time of the passage of said Ordinance No. 105 certain appointees of the Governor of Maryland, under said section 240, having duly qualified and paid their license fees into the treasury of the State, were conducting auction sales in Baltimore City, their commissions expiring May 1, 1924.

8. Further answering said petition and each and every paragraph thereof, your respondent says that said petition is bad in substance and insufficient in law.

9. Further answering said petition and each and every paragraph thereof, your respondent says that the petitioners have not stated in their said petition such case as entitled them to the relief prayed for.

Having fully answered said petition and having shown cause why the writ of mandamus prayed therein should not issue, your respondent prays to be hence dismissed with his costs.

To this answer petitioners demurred, and the demurrer was sustained, and the writ ordered to be issued. This appeal is from that order.

The only question discussed in the briefs and oral arguments is the validity of Ordinance No. 105.

In appellant's brief it is said: "The pleadings raise the question of the power of the Mayor and City Council of

Baltimore, under the Home Rule Amendment, to repeal the revenue producing laws of the State, and to appropriate to itself income which, for almost a century, has regularly flowed into the State treasury, and on which the State's budget, required by the State Constitution, has been based.

In the opinion of the trial court and in the briefs of counsel the history of legislation in this State in regard to the appointing and licensing of auctioneers is given, from which it appears that in 1798 the City of Baltimore passed the first ordinance on the subject, which was repealed by an ordinance passed in 1801, which "forbade any person to exercise the trade or business of an auctioneer" unless he first obtained a license from the Mayor, the yearly charge for which was $750, payable to the city.

Each of these ordinances required auctioneers to give bond. Their validity and that of the bonds required thereunder was sustained by this Court in the *McMechen* cases, 2 H. & J. 41 and 3 H. & J. 534.

The later ordinance remained in force until April 1st, 1828, when chapter 111 of the Acts of 1827 went into effect. Under this act, the Governor and Council appointed auctioneers for the City of Baltimore and the license fees were payable to the State. The act has been amended frequently, but the provisions for the appointment of auctioneers by the Governor and for the payment of license fees and duties to the State have remained in force until now, unless they were validly repealed by Ordinance No. 105.

Numerous decisions of this Court have sustained the validity of acts, whether local or general in their application, imposing license taxes on businesses and occupations, and without regard to whether the purpose was merely to regulate or to produce revenue for the State. *Rohr* v. *Gray,* 80 Md. 276; *State* v. *Applegarth,* 81 Md. 300; *Mason* v. *Cumberland,* 92 Md. 461; *Meushaw* v. *State,* 109 Md. 91; *Ruggles* v. *State,* 120 Md. 553.

Neither can there be any doubt as to the power of the city to impose such license fees for either purpose. That

power is contained in sub-section 14 of section 6 of article 4 of the Code of Public Local Laws of Maryland. *Meushaw v. State,* 109 Md. 84; *Mason v. Cumberland,* 92 Md. 461.

It may well be that the power could be exercised by both the city and the State at the same time. But that need not be decided here. The purpose of ordinance No. 105 was not only to withdraw from the Governor the power of appointment of auctioneers for Baltimore City, but to deprive the State of the revenue theretofore received by it from license fees and duties imposed by the statute sought to be repealed.

It is contended by the city that authority for the passage of such an ordinance is found in section 3 of article 11A of the Constitution of Maryland, known as the Home Rule Amendment, which provides that after the adoption of a charter by the City of Baltimore under said amendment, "the Mayor of Baltimore and City Council of the City of Baltimore * * * subject to the Constitution and Public General Laws of this State shall have full powers to enact local laws of said City * * * including the power to repeal or amend local laws of said City * * * enacted by the General Assembly, upon all matters covered by the express powers granted as above provided"; etc.

The charter adopted by the city in 1918, under the provisions of said amendment, contained the first 222 sections of what is known as the 1915 edition of article 4 of the Public Local Laws of Maryland, title "City of Baltimore," with certain new sections.

At the time of the adoption of the charter there were in force in the city certain local laws, which appear in the revised edition under the caption of "Miscellaneous Local Laws," beginning with section 222A. Among these miscellaneous local laws in force in said city, not part of the charter adopted in 1918, were certain sections under the caption of "Auctions," known as sections 235 to 278, inclusive, of the Revised Edition of 1915.

Section 2 of said amendment provides that "the powers heretofore granted to the City of Baltimore, as set forth in

article 4, section 6, Public Local Laws, shall not be enlarged or extended by any charter formed under the provisions of this article, but such powers may be extended, modified, amended or repealed by the General Assembly.

Among the powers granted to the City of Baltimore in section 6 of article 4 of the Public Local Laws is the power "to license, tax and regulate all businesses, trades, avocations or professions." Also, "to have and exercise within the limits of the City of Baltimore all the power commonly known as the police power to the same extent as the State has or could exercise said power within said limits."

The sections repealed and those amended by the ordinance were enacted as a public local law, and are published in the Code of Public Local Laws.

If that alone is sufficient to bring them within the provision of section 3 of said amendment, then that is an end of the matter, and the validity of the ordinance is established.

And further it must be conceded that, so far as the area of their applicability is concerned, they come within the definition of local laws in *Webster v. County Commissioners of Baltimore County,* 29 Md. 519, and in *Herbert v. Baltimore County,* 97 Md. 639.

Nor are they expressly excluded from the operation of said amendment by its definition of what is *not* a local law. because they are not "so drawn as to apply to two or more geographical sub-divisions of this State."

That the law sought to be repealed was intended to be a revenue law is shown both by the amount of the charge for licenses and by the imposition of duties. The alleged fact that the law has ceased to be enforced as to duties, of which there is no evidence, does not change its character.

If such a law can be held to be a local law within the meaning of the Home Rule Amendment, then the State has surrendered its right to impose duties or taxes under article 15 of the Bill of Rights on businesses and occupations in Baltimore City or in any county which adopts a charter under the provisions of said amendment—or retains the right subject to the will of the city or county. And this is just

what the city contends the State has done as to the auction business in Baltimore City, so long as the present powers granted to the city remain unrepealed by the General Assembly, or unless such duties and taxes are made applicable to two or more geographical sub-divisions of the State. We are unable to reach this conclusion. That the mere designation of a law as a local law or its treatment as such by the General Assembly does not make it a local law for all purposes is illustrated in the case of *Bradshaw v. Lankford,* 73 Md. 428.

That case can readily be distinguished in its facts from the case at bar, but there is one principle common to both cases, viz:/a law is not necessarily a local law merely because its operation is confined to Baltimore City or to a single county, if it affects the interests of the people of the whole State.

In the *Bradshaw* case, *supra,* this Court held invalid the Act of 1890, chapter 629, which submitted to the voters of certain election districts of Somerset County the question whether or not the taking of oysters by scoop or dredge should be prohibited, because the act could "in no sense be considered a local law affecting only the people of the several election districts to which it was submitted for their decision." "It thus deprives the people of the entire State of the common right which they enjoyed to take oysters by scoop or dredge within the waters of said county."

In the present case, on like reasoning, the act sought to be repealed by the ordinance cannot be considered a local law affecting only the people of Baltimore City, because it provides revenue for the whole State.

Whether the revenue to be derived from the auction business in Baltimore City should be exclusively for the use of the city is a political question. If it is not deemed by the city feasible to impose an additional tax upon this business, the appeal for relinquishment by the State of the revenue it enjoys from that source must be made to the Legislature.

*Judgment reversed, with costs to appellant.*