STEIMEL ET AL. *v.* BOARD OF ELECTION
SUPERVISORS OF PRINCE GEORGE'S
COUNTY, MARYLAND ET AL.

[No. 121, September Term, 1975.]

*Decided May 24, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James F. Vance* for appellants.

*Franklin Goldstein*, with whom were *Joseph S. Kaufman, Melnicove, Greenberg, Kaufman & Weiner, P.A.*, on the brief, for Dart Drug Corp., Drug Fair, Inc., Frank's Hardware, Inc., Giant Food, Inc., The Hecht Company, Hechinger Company and Peoples Drug Stores, Inc.; *William v. Meyers* and *Meyers & Billingsley, P.A.*, on the brief, for Board of Election Supervisors of Prince George's County.

LEVINE, J., delivered the opinion of the Court.

In this appeal, we decide the validity of a law enacted by the General Assembly which is applicable solely to one charter county and which provides that the law be submitted to a referendum of the voters of that county. The Circuit Court for Prince George's County (Judge Robert B. Mathias) held that it was valid, and because of the manifest importance of the questions presented, we granted certiorari prior to consideration of the case by the Court of Special

Appeals. Since we are in agreement with the circuit court, we shall affirm.

The enactment in question is Chapter 861, Laws of Maryland, 1975, which, subject to a referendum of county voters at the next general election, would have the effect of repealing Sunday closing restrictions applicable to retail and wholesale establishments in Prince George's County.[1] Chapter 861 achieves this result by repealing those provisions of Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 534H, applicable solely to Prince George's County, which contain the restrictions. Prior to the enactment of § 534H by Chapter 421 of the Laws of 1968, Sunday sales in Prince George's County had been governed by the more restrictive provisions of § 521 of Art. 27, a public general law which, at one time, applied throughout the state.[2] Although Prince George's County was not a charter county when Chapter 421 was enacted in 1968, it has enjoyed that status continuously since 1970.[3]

Following passage of Chapter 861, appellants filed a bill of complaint seeking declaratory and injunctive relief. The thrust of their argument in the circuit court, as in this Court, was that the regulation of Sunday closings is within the powers delegated to charter counties by reason of Code (1957, 1973 Repl. Vol.) Art. 25A, commonly referred to as the "Express Powers Act," § 5 (S), which authorizes county councils in charter counties to enact such ordinances "as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." Therefore, they argued, the act violated the home rule provisions of the State Constitution, specifically Art. XI-A, § 4, which

---

1. Chapter 878 of the Laws of 1975, also subject to a local referendum, would accomplish the same result in Montgomery County. Virtually all of the recent legislative history which we shall recite in regard to Sunday closing regulation in Prince George's County has been paralleled in Montgomery County.

2. A significant number of the 23 counties, charter and noncharter alike, are now governed, independently of § 521, by provisions in Art. 27 similar to § 534H.

3. Section 1102 of the Prince George's County Charter, adopted November 3, 1970, left extant all public local laws not repealed by reason of inconsistency with the Charter.

prohibits the General Assembly from enacting a local law for the City of Baltimore or any charter county "on any subject covered by the express powers granted" to such geographical subdivisions.

At the conclusion of the circuit court hearing, Judge Mathias rendered an oral opinion detailing the reasons for his decision, as embodied in the comprehensive decree from which this appeal is taken. He ruled, for two reasons, that Chapter 861, though a public local law, violated neither the home rule provisions of the State Constitution nor the Express Powers Act. First, Sunday closing regulation was found not to be within any of the express powers conferred upon charter counties, and secondly, it was concluded that the General Assembly has fully occupied and preempted the field of Sunday closing regulation. Therefore, Chapter 861, though in the nature of a public local law, was a valid exercise of the legislative power by the General Assembly despite the prohibition contained in Art. XI-A, § 4 and the Express Powers Act. And since Chapter 861 was found to be a local law, it could be properly submitted to a local referendum.

In this Court, appellants make the same arguments which they advanced below: That Chapter 861 is a local law violating the home rule provisions of the Constitution and the Express Powers Act, and alternatively, that if deemed to be a public general law, the act is nevertheless invalid since such a law cannot be conditioned upon a referendum, either throughout the entire state or in a single political subdivision.

(1)

Whether Chapter 861 is a public general law or a public local law, therefore, emerges as a pivotal issue in this case, since our resolution of that question determines not only the validity of the referendum provision, but also the applicability of Art. XI-A, § 4, of the Constitution. It is beyond question that a public general law cannot be made subject to a referendum, either on a statewide level,

*Brawner v. Supervisors,* 141 Md. 586, 595, 119 A. 250 (1922), or in one county or the City of Baltimore, *Levering v. Supervisors of Elections,* 137 Md. 281, 289, 112 A. 301 (1920). It is equally well settled, however, that a public local law may be conditioned upon a referendum of voters in the area or political subdivision affected by the legislation. *Stewart Petroleum Co. v. Board,* 276 Md. 435, 446, 347 A. 2d 854 (1975); *Ness v. Baltimore,* 162 Md. 529, 537, 160 A. 8 (1932); *Bradshaw v. Lankford,* 73 Md. 428, 430-31, 21 A. 66 (1891).

Our inquiry, then, focuses initially on the question whether, as found by the circuit court, Chapter 861 is a public local law. In *Cole v. Secretary of State,* 249 Md. 425, 435, 240 A. 2d 272 (1968), where we held that an act of the General Assembly which by amendment to public general law established a people's court system for Cecil County was a public local law, the test applied was whether the law, in subject matter and substance, was confined in its operation to prescribed territorial limits and was equally applicable to all persons within such limits. We thus distinguished the enactment there from public general law, "which deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Id.*

Judged by this test, Chapter 861 is manifestly a public local law. As the title states, it is "AN ACT concerning Prince George's County" and is "For the purpose of permitting all businesses in Prince George's County to be open on Sunday . . . ." The text of the act is punctuated with references to Prince George's County. Clearly, then, Chapter 861, in subject matter and substance, is confined in its operation to prescribed territorial limits and is equally applicable to all persons within Prince George's County. Furthermore, the subject matter of Chapter 861 is of no significant interest beyond the boundaries of Prince George's County. In this regard, the case here is distinguishable from a group of earlier cases decided by this Court dealing with statutes which, though local in form, were held to be public general laws because they affected the

interests of the entire state. *See, e.g., Norris v. Baltimore,* 172 Md. 667, 681-82, 192 A. 531 (1937); *Dasch v. Jackson,* 170 Md. 251, 260-61, 183 A. 534 (1936); *Gaither v. Jackson,* 147 Md. 655, 128 A. 769 (1925); *Bradshaw v. Lankford, supra,* 73 Md. at 431-32.

Nor does the fact that Sunday closings formerly were governed exclusively in this state by public general law — a circumstance which prevails today in several counties — constitute Chapter 861 a public general law. As we have previously indicated, a statute taking the form of an amendment to public general law does not itself thereby become so constituted if its subject matter is exclusively local. *Cole v. Secretary of State, supra,* 249 Md. at 433; *State v. Stewart,* 152 Md. 419, 425, 137 A. 39 (1927).

We hold, therefore, that Chapter 861 is a public local law and, consequently, is not invalidated by reason of the provision for a referendum of the voters of Prince George's County.

(2)

We turn, then, to the more vexing question whether Chapter 861 violates the constitutional prohibition against enactment of a public local law by the General Assembly "on any subject covered by the express powers granted" to a charter county or the City of Baltimore.[4] From the outset, we remain mindful of the purposes underlying Art. XI-A, the "Home Rule Amendment," succinctly stated for the Court by Judge W. Mitchell Digges in *State v. Stewart, supra,* 152 Md. at 422:

"... [T]hat a larger measure of home rule be

---

4. In its entirety, Art. XI-A, § 4 of the Maryland Constitution provides:

"From and after the adoption of a charter under the provisions of this Article by the City of Baltimore or any County of this State, no public local law shall be enacted by the General Assembly for said City or County on any subject covered by the express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act. The term 'geographical sub-division' herein used shall be taken to mean the City of Baltimore or any of the Counties of this State."

secured to the people of the respective political subdivisions of the state in matters of purely local concern, in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as 'log-rolling'; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested. . . ."

*Accord, Scull v. Montgomery Citizens*, 249 Md. 271, 274, 239 A. 2d 92 (1968).

In 1918, pursuant to § 2 of Art. XI-A, the General Assembly enacted Art. 25A, the Express Powers Act. In addition to enumerating in § 5 the powers expressly granted to charter counties, none of which mentions the regulation of Sunday closings, subsection (S) of § 5 provides in pertinent part:

"The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances *as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.* " (emphasis added).

It is upon this general welfare clause, rather than upon any of the powers otherwise specifically enumerated in § 5, that appellants rely for their contention here.

Two recent decisions of this Court, upon which appellants place major reliance, have dealt with the application of the general welfare clause in § 5 (S) to local legislation affecting a charter county: *County Council v. Investors Funding*, 270 Md. 403, 411-15, 312 A. 2d 225 (1973), and *Mont. Citizens League v. Greenhalgh*, 253 Md. 151, 161-62, 252 A. 2d 242 (1969). Unlike the instant case, however, those two decisions were concerned with legislation enacted by a local county council. In *Greenhalgh*, we indicated that the language of § 5 (S) should be construed broadly to permit home rule counties to legislate beyond the powers expressly enumerated in § 5 to maintain "the peace, good government, health and welfare of the county." On those grounds, we held that a fair housing law, enacted by the Montgomery County Council to prohibit racial and religious discrimination in the sale or rental of housing, was a valid exercise of the power granted by § 5 (S). Similarly in *Investors Funding*, we upheld as a valid exercise of the power the council's enactment of a fair landlord-tenant relations act.

The decisive question here, then, is whether the General Assembly included within the expansive sweep of § 5 (S) the power to regulate Sunday closings. We think not. Nor at any time since the advent of home rule has the General Assembly or any charter county thought so.

As we noted in *Rebe v. State's Attorney*, 262 Md. 350, 351-52, 277 A. 2d 616 (1971), the subject of Sunday closing regulation is hardly one of recent vintage. Sections 492 through 534V of Art. 27, a patchwork of "blue laws" collected under the subtitle "Sabbath Breaking," trace their legislative ancestry back to 1649. 1 Archives of Maryland 244, 245 (1883). Section 492, a public general law initially applicable throughout the state which prohibits "bodily labor on Sundays," apparently stems from Chapter XVI, § 10 of an Act passed by the General Assembly in 1723. Bacon, Laws of Maryland (1765). Onto § 492 have been engrafted the myriad exceptions and variations which were adopted during this century for many of the counties, cities and towns of Maryland.

Section 492 is one of the three statutory provisions which originally constituted the public general legislation in this area. The others are reflected today in § 521, regulating Sunday sales, and § 522, prohibiting the opening or use of any dancing saloon, opera house, bowling alley or barber shop on Sunday. These three statutes were continuously applicable throughout the entire state until the enactment of Chapter 287 by the General Assembly in 1931. Chapter 287 excepted the City of Baltimore, which had previously attained home rule status in 1918, from the operation of state law regulating Sunday observance then found in §§ 483, 484 and 485 of Art. 27, Code (1924). Chapter 287 was conditioned upon the passage of a municipal ordinance, subject to a referendum of local voters, to govern in the city.

A challenge to Chapter 287 led to the decision of this Court in *Ness v. Baltimore, supra.* There, it was contended unsuccessfully that the act violated Art. XI-A of the Constitution because it dealt with a subject that was included in the powers granted to the city. Appellants rely upon *Ness* as authority for the proposition that Sunday closing regulation was encompassed within the police power granted to charter counties, but we do not agree. The actual basis for the decision there was that even assuming the City could, under its charter, legislate in the Sunday closing area, Chapter 287 merely withdrew the City of Baltimore from the ambit of public general law, and did not itself regulate Sunday closings in the City.

The 1931 passage of Chapter 287 was the forerunner of a succession of local laws — applicable within a single county — enacted by the General Assembly in the field of Sunday closings. Those local laws enacted by the General Assembly have not been confined to the removal of local areas from the operation of the statewide public general law, as did Chapter 287, but rather have comprehensively regulated Sunday sales in the local areas to which they applied. Moreover, those local laws have been enacted for charter and noncharter counties alike. Indeed, the process which began in the 1930's appears to have quickened its pace in recent

years even as the trend toward home rule has gained momentum.

While, beginning in the 1930's, there had been numerous exceptions enacted for many of the counties, cities and towns, for the most part relaxing the prohibition against moving pictures, recreational activities and athletic events, it was not until 1968 that there emerged the first major exceptions to the prohibition against Sunday sales now found in Art. 27, § 521. In that year, three laws were enacted excepting Baltimore, Montgomery and Prince George's Counties from §§ 492, 521 and 522 of Art. 27, the effect of which was to remove those counties from the operation of public general law in favor of a public local law, enacted by the General Assembly, applicable to each of them. Particularly significant is the fact that at the time those local laws were enacted by the General Assembly, Montgomery County had enjoyed home rule status for 20 years and Baltimore County for 12 years.[5] This same pattern, continuing through 1975, has seen the enactment by the General Assembly of similar local legislation in regard to a number of other counties, including every charter county in the state, coupled with subsequent changes in Baltimore, Montgomery and Prince George's Counties, and culminating in Chapters 861 and 878 of the Laws of 1975. At no time does it appear to have been suggested by any local subdivision that the actions of the General Assembly violated the home rule provisions of Art. XI-A, and the Express Powers Act.

More to the point is the absence of any evidence that a charter county has sought to legislate in the area of Sunday observance. In our view, the consistent and unchallenged enactment, repeal and reenactment of Sunday closing legislation by the General Assembly on a local-law basis is

---

5. We dealt with broad scale attacks on the validity of the Prince George's law in Giant of Md. v. State's Attorney, 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915 (1973), and the Montgomery law in Dart Drug Corp. v. Hechinger Co., 272 Md. 15, 320 A. 2d 266 (1974). In neither of those decisions did we suggest that the statute in question violated the home rule provisions of the Constitution or the Express Powers Act.

persuasive evidence that it never intended to grant to charter counties the power to legislate in this area. We think it not without significance that in the one instance in which a home rule subdivision, the City of Baltimore, itself enacted Sunday closing legislation, it did so only after first being specifically granted that power by Chapter 287 of the Acts of 1931. Thus, throughout the entire history of this state, the General Assembly has been the single governmental body to enact Sunday closing legislation in the form of general or local law for the counties of Maryland.

Without suggesting any retreat from our holdings in *Mont. Citizens League v. Greenhalgh* or *County Council v. Investors Funding*, both *supra*, we therefore hold that, in light of the unique history of legislation dealing with this subject matter, the regulation of Sunday closing in this state is not included within the powers granted to charter counties in Art. 25A, § 5. Accordingly, since Chapter 861 does not deal with a subject covered by the express powers granted to charter counties, it is not violative of Art. XI-A, § 4 of the State Constitution.

*Judgment affirmed; appellants to pay costs.*