833 A.2d 518

**HOLIDAY UNIVERSAL, INC., et al.**

**v.**

**MONTGOMERY COUNTY, Maryland, et al.**

**No. 74, Sept. Term, 2002.**

Court of Appeals of Maryland.

Oct. 9, 2003.

Peter F. Axelrad (Frederick C. Sussman of Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for appellants/cross-appellees.

Marc P. Hansen, Chief, Division of General Counsel (Charles W. Thompson, Jr., County Attorney, and Karen L. Federman Henry Principal Counsel for Appeals, on brief), Rockville, for appellees/cross-appellants.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

In this action, the appellants challenge an ordinance enacted by the Montgomery County Council, which enables Montgomery County to regulate a future service contract where the

performance of the contract is "primarily" in Montgomery County or, regardless of where performance takes place, when the contract is merely signed in Montgomery County.[1] The dispositive issue before us is whether the Montgomery County ordinance is a valid "local law" under Article XI–A of the Maryland Constitution. We shall hold that, because of its significant extraterritorial impact, the ordinance is not a "local law" and that the Montgomery County Council exceeded the authority delegated to charter home rule counties in enacting the ordinance.

## I.

On August 3, 1993, the Montgomery County Council enacted Bill No. 22–92, which added § 11–4A to the Consumer Protection Chapter of the Montgomery County Code. Section 11–4A(a) states that "[i]t is unlawful for a merchant to engage in an unfair trade practice in the offering or sale of a future service contract." Under § 11–4A(b)(1), three conditions must be met before a contract for the sale of services will be deemed a "future service contract," subjecting the merchant in question to the administrative oversight and penalties established under Chapter 11. First, performance of the contract must take place either "on a continuing basis or during a period of time after the contract is signed." § 11–4A(b)(1)(A). In addition, the ordinance limits regulation to services provided by a "health spa, dance studio, weight reduction service, self-defense school, dating service, or vacation and travel club." § 11–4A(b)(1)(B). Finally, the ordinance covers any contract for the sale of services that "will *primarily* be provided in [Montgomery] County *or* [services] under a contract *signed* in [Montgomery] County." § 11–4A(b)(1)(C) (emphasis added).

---

1. The appellants in this case are Holiday Universal, Inc., N.A.T.S.O.D., Inc. and N.A.T.S.O.D. Two, Inc. Holiday Universal, while a single corporation, trades as both "Bally's Holiday Spa" and "Bally's Total Fitness." Holiday Universal is engaged in the business of providing health club services. The other two appellants, both of whom trade as "Now and Then Dance Studio," sell ballroom dance lessons.

Section 11–4A(c) details the types of practices that are considered unfair trade practices as follows:

"(c) Unfair trade practices prohibited by this Section are:

(1) refusing to allow a consumer to cancel a future service contract, without any obligation to the consumer, within:

    (A) three business days after the consumer signs the contract, or

    (B) any longer period allowed by State or Federal law;

(2) representing, orally or in writing, that a consumer has no legal right to terminate a future service contract;

(3) failing to offer a consumer the option to either:

(A) enter into an initial contract for 90 days or less; or

(B) receive and pay for each unit of service on a periodic or per unit basis;

(4) refusing to refund to the consumer, after a contract is cancelled during the cancelling period allowed under paragraph (1), any money paid that exceeds the amount a merchant may lawfully retain:

    (A) within 15 days, in cash or check form, if the consumer paid in cash, money order, or traveler's check;

    (B) immediately, by recrediting the consumer's account, if the consumer signed a credit card slip; or

    (C) either by returning the consumer's check immediately or by issuing a refund check within 15 days after the consumer's check clears the merchant's bank, if the consumer paid by check;

(5) contacting, or having an agent contact, a consumer in any manner to collect payment which exceeds the amount a merchant may lawfully retain; and

(6) in addition to any other disclosure requirement imposed under State or Federal law, failing to include in each contract the following disclosure in boldface type, no smaller than 10 points, that contrasts with surrounding text:

CANCELLATION AND REFUND

Under Montgomery County law, you can cancel this contract without any obligation within 3 business days after signing it and receive a full refund.

You must notify (name of service provider) of your decision to cancel this contract by certified mail or by written notice delivered to (name of service provider).

OTHER DISCLOSURES

Federal law give you certain rights to stop an automatic charge against your credit card or bank account under this contract. The only charges or fees you are required to pay under this contract are:

(list each charge or fee per year, month, or week, or per unit of service)."

Finally, § 11–4A(d) governs when a future service contract is deemed cancelled, stating that such a contract "is cancelled when the consumer delivers written notice of the cancellation to the merchant." The ordinance then defines what constitutes "delivery" of the written notice.

Following the enactment of § 11–4A, several future service providers filed a complaint in the Circuit Court for Montgomery County seeking a declaratory judgment that § 11–4A was invalid on several grounds, as well as injunctive relief and compensatory and punitive damages.[2] In their amended complaint, the appellants alleged that, prior to the enactment of § 11–4A, many disputes arose between the appellants and the Montgomery County Office of Consumer Affairs regarding the obligation of the appellants' members to pay the unpaid portion of their membership fee or to pay for unpaid dance lessons, and regarding the members' entitlement to refunds in the case of advance payments in the event that the members breached or cancelled their contracts. Moreover, the appellants alleged that the Office of Consumer Affairs had solicited and received complaints about them from consumers who

---

**2.** The original plaintiffs were eight separate future service providers. Subsequently, the parties entered into a joint stipulation of dismissal with prejudice as to five of these merchants. The appellants are the remaining three merchants.

breached or cancelled their contracts. They argued that, as a result of the complaints, the Office of Consumer Affairs had threatened to issue citations for allegedly committing deceptive trade practices.

In the Spring of 1992, the Office of Consumer Affairs requested that legislation be introduced to create an equitable contractual balance wherein consumers pay only for services received and merchants are compensated only for services actually provided. About a year later, the Montgomery County Council enacted § 11–4A, the ordinance at issue in the case at bar.

The appellants' amended complaint challenged § 11–4A and the actions of the Consumer Affairs Office on several grounds. The complaint alleged as follows: the ordinance was preempted by State law; the County Council in enacting § 11–4A exceeded the authority granted to charter counties by the Maryland Constitution; the ordinance impairs the obligations of contracts in violation of Article I, § 10, cl. 10, of the United States Constitution; the ordinance denies the appellants equal protection of the laws under the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights; the ordinance deprives the appellants of liberty and property without the due process of law in violation of the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights; the Office of Consumer Affairs' policies and practices amount to a regulation promulgated in violation of the Montgomery County Administrative Procedure Act; the Office of Consumer Affairs tortiously interfered with the appellants' contracts; and the Office of Consumer Affairs tortiously interfered with the appellants' business relations. The complaint stated that, since the appellants would allegedly suffer immediate, substantial, and irreparable injury, they were entitled to injunctive relief.

Following cross-motions for partial summary judgment, and at the conclusion of a hearing, the circuit judge orally stated that, with the exception of subsection (c)(5), the ordinance was

a valid local law and did not violate either the state or federal constitutions. The court held that subsection (c)(5) was severable from the remainder of the ordinance. The Circuit Court granted Montgomery County's motion for partial summary judgment regarding the ordinance's validity, except for subsection (c)(5). Stating that subsection (c)(5) of the ordinance was unconstitutionally vague and in violation of Article 24 of the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment, the Circuit Court simply granted the appellants' motion for partial summary judgment as to subsection (c)(5) only. The Circuit Court did not file a written declaratory judgment reflecting its oral rulings.

After an attempted interlocutory appeal was dismissed by the Court of Special Appeals, the appellants' non-constitutional claims, based on alleged actions of the Office of Consumer Affairs, and the claim for money damages, were dismissed with prejudice. The Circuit Court then entered an order declaring that subsection (c)(5) violated due process and was unconstitutional. The declaration did not include the court's rulings on the validity of the remainder of § 11–4A.[3] The Circuit Court also permanently enjoined Montgomery County from enforcing subsection (c)(5).

The appellants noted an appeal and Montgomery County noted a cross-appeal from the final judgment. This Court issued a writ of certiorari before the Court of Special Appeals heard the case. *Holiday v. Montgomery County,* 371 Md. 261, 808 A.2d 806 (2002).

Before this Court, the appellants raise three issues: First, whether § 11–4A is a "local law" authorized by Article XI–A of the Maryland Constitution; second, whether State law preempts the ordinance; and third, whether the Circuit Court properly severed subsection (c)(5) from the remainder of the ordinance. Montgomery County challenges the declaration

---

3. In a declaratory judgment action, the trial court's rulings on issues ordinarily must be reflected in a separate written declaratory judgment. *See Glover v. Glendening,* 376 Md. 142, 154–156, 829 A.2d 532, 539–540 (2003), and cases there cited.

that subsection (c)(5) was invalid. Because we shall hold that § 11–4A is not a "local law" under Article XI–A of the Maryland Constitution, it is unnecessary for us to reach the last two issues raised by the appellants or the issue raised by Montgomery County.

## II.

Montgomery County is a charter home rule county under Article XI–A of the Maryland Constitution. *See Tyma v. Montgomery County*, 369 Md. 497, 504, 801 A.2d 148, 152 (2002); *McCrory Corp. v. Fowler*, 319 Md. 12, 16, 570 A.2d 834, 835 (1990); *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 155–162, 252 A.2d 242, 245–247 (1969). The so-called Home Rule Amendment, Article XI–A of the Maryland Constitution, "enabled counties, like Montgomery County, which chose to adopt a home rule charter, to achieve a significant degree of political self-determination." *Tyma v. Montgomery County, supra*, 369 Md. at 504, 801 A.2d at 152. As this Court stated in *McCrory Corp. v. Fowler, supra*, 319 Md. at 16, 570 A.2d at 835–836, "[i]ts purpose was to transfer the General Assembly's power to enact many types of county public local laws to the Art. XI–A home rule counties," citing generally, *Board of Election Laws v. Talbot County*, 316 Md. 332, 344, 558 A.2d 724, 730 (1989); *Griffith v. Wakefield*, 298 Md. 381, 384, 470 A.2d 345, 347 (1984); *Town of Forest Heights v. Frank*, 291 Md. 331, 342, 435 A.2d 425, 431 (1981); *Cheeks v. Cedlair Corp.*, 287 Md. 595, 597–598, 415 A.2d 255, 256 (1980). *See also H.P. White v. Blackburn*, 372 Md. 160, 167, 812 A.2d 305, 309 (2002); *Montrose Christian School v. Walsh*, 363 Md. 565, 579, 770 A.2d 111, 119 (2001).

In *McCrory Corp. v. Fowler, supra*, 319 Md. at 16–17, 570 A.2d at 836, we discussed the origins of a charter county's authority to enact ordinances under Article XI–A:

"Sections 1 and 1A of Article XI–A empower ... the counties of Maryland to adopt a charter form of local government. Section 2 directs the General Assembly to provide a grant of express powers for charter home rule

counties. The General Assembly followed that directive and enacted the Express Powers Act by Ch. 456 of the Laws of Maryland of 1918, codified as Code (1957, 1987 Repl.Vol.), Art. 25A. Section 3 of Article XI–A provides (emphasis supplied):

> 'From and after the adoption of a charter by the City of Baltimore, or any County of this State, as hereinbefore provided, the Mayor of Baltimore and City Council of the City of Baltimore or the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact *local laws* of said city or county ... upon all matters covered by the express powers granted as above provided. . . .' "

The *McCrory* opinion then emphasized that "Article XI–A 'does not constitute a grant of absolute autonomy to local governments.' *Ritchmount Partnership v. Board,* 283 Md. 48, 56, 388 A.2d 523, 529 (1978). This Court's decisions . . . make it clear that the Home Rule Amendment limits the Montgomery County Council to enacting 'local laws' on matters covered by the Express Powers Act." *McCrory Corp. v. Fowler, supra,* 319 Md. at 17, 570 A.2d at 836. *See also H.P. White v. Blackburn, supra,* 372 Md. at 167–168, 812 A.2d at 309 ("As made clear by the language of Article XI–A, § 3, of the Constitution . . . the law-making authority of a home rule county is limited to the 'power to enact *local* laws of said . . . County' "); *Sweeney v. Hartz Mountain Corp.,* 319 Md. 440, 573 A.2d 32 (1990). Moreover, we reiterated in *Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 441 n. 1, 758 A.2d 995, 996 n. 1 (2000), that "[i]f . . . an ordinance enacted by a charter county does not constitute a 'local law' within the meaning of Article XI–A, it is beyond the authority of a charter county and, therefore, is unconstitutional."

Section 4 of Article XI–A explicitly states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." As this Court stated in *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534, 537–538 (1936), apart

from the limitation expressed in § 4 of Article XI–A, "[the Home Rule Amendment] attempts no definition of the distinction between a local law and a general law, but leaves that question to be determined by the application of settled legal principles to the facts of particular cases in which the distinction may be involved."

■ In attempting to draw the line between a local law and a general law, this Court has observed that a local law "in subject matter and substance" is "confined in its operation to prescribed territorial limits. . . ." *Steimel v. Board,* 278 Md. 1, 5, 357 A.2d 386, 388 (1976). On the other hand, the *Steimel* Court noted, a general law " 'deals with . . . a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.' " *Ibid.* We have also cautioned that one must look beyond the form of the ordinance to its substance: "some statutes, local in form," are "general laws, since they affect the interest of the whole state." *Cole v. Secretary of State,* 249 Md. 425, 434, 240 A.2d 272, 278 (1968).

■ The appellants in this case are subject to regulation under § 11–4A. As required by § 11–4A(b), they provide services under a contract in which the performance of the contract takes place on a continuing basis or some time after the contract is signed. They are within the class of merchants named in § 11–4A(b)(2), and they are engaged in business in and outside of Montgomery County.

■ The appellants correctly assert that § 11–4A is not a local law because it has substantial territorial effect beyond Montgomery County. Indeed, the County concedes that, in resolving whether an ordinance is a local law, one must focus, *inter alia,* upon whether the ordinance is essentially limited to the territorial boundaries of the enacting jurisdiction. Under § 11–4A(b)(1)(C), the Montgomery County ordinance applies to contracts for future services that will *"primarily* be provid-

ed in [Montgomery] County [4] *or* under a contract *signed* in [Montgomery] County" (emphasis added). Thus, it is undisputed that the ordinance could directly apply in a jurisdiction outside of Montgomery County. By its own language, the ordinance makes clear that it would apply to a contract signed outside of Montgomery County, by parties residing outside of Montgomery County, where as much as forty-nine percent of the performance of the contract takes place outside of Montgomery County. Even more significantly, the ordinance applies to a contract fortuitously signed in Montgomery County, by parties who reside outside of Montgomery County, where *none* of the performance takes place within Montgomery County. Any contract for services of the type covered by the ordinance, regardless of where in the entire world the contract is to be performed, is regulated by the ordinance if the contract happens to be signed in Montgomery County.

Numerous opinions of this Court have set forth principles for determining whether an enactment violates the local law limitation imposed by Article XI–A of the Maryland Constitution. For example, a Montgomery County ordinance which extended benefits to domestic partners of Montgomery County employees, in *Tyma v. Montgomery County, supra,* 369 Md. 497, 801 A.2d 148, was upheld as a valid local law. This Court stated that "the Act affects only the personnel policies of Montgomery County.... [T]he only employer this ordinance impacts is the County; it has no effect outside the County...." 369 Md. at 515, 801 A.2d at 158.

The Court in *Gaither v. Jackson,* 147 Md. 655, 128 A. 769 (1925), however, held that a statute providing for the gubernatorial appointment of auctioneers in Baltimore City only, with their license fees paid to the State, was not a "local law" under Article XI–A of the Constitution because it "affect[ed] the interests of the people of the whole State." 147 Md. at 667, 128 A. at 773.

---

**4.** During a Circuit Court hearing, the County's counsel stated that the word "primary" means fifty-one percent.

Other legislative enactments, directly operative on events in one subdivision, or triggered by events in one subdivision, have been held not to be local laws because of their effect upon persons in the rest of the State. Thus, in *Norris v. Baltimore*, 172 Md. 667, 192 A. 531 (1937), this Court held that a statute requiring the use of voting machines in one subdivision was not a local law because the elections covered state and federal officials.

Similarly, in *Dasch v. Jackson, supra*, 170 Md. at 261, 183 A. at 538, an enactment concerning the licensing of paper hangers in Baltimore City was not deemed a local law because, *inter alia*, it affected "the right of persons not residing in the City of Baltimore ... to engage in the business of paper hanging in Baltimore City." *See also Bradshaw v. Lankford*, 73 Md. 428, 21 A. 66 (1891) (Prohibition of oyster dredging in Somerset County was not a local law, as it deprived persons in the rest of the State from dredging for oysters in that County).

Although the enactments in the *Gaither, Norris, Dasch*, and *Bradshaw* opinions appeared to be local in character, they were held to be general, and not local, laws because of the impact on persons throughout the State. The same is true of the Montgomery County ordinance at issue in this case. It could have a major impact on services performed for people in the rest of the State, or even the rest of the world, based simply on a contract having been signed in Montgomery County. Moreover, § 11–4A of the Montgomery County Code purports to regulate a service provided in another county of the State if fifty-one percent of the service is provided in Montgomery County. Under our cases, the impact of the ordinance upon persons outside of Montgomery County is too great for the ordinance to be a local law under Article XI–A of the Constitution.

In arguing that § 11–4A of the Montgomery County Code does not violate Article XI–A of the Maryland Constitution, the County contends that the Express Powers Act, Maryland Code (1957, 2001 Repl.Vol.), Article 25A, § 5(S), grants to

charter counties "the broadest authority for local legislation" designed to "promote the general welfare" (Montgomery County's brief at 4–5). This argument misses the mark. Even assuming, *arguendo*, that the subject matter encompassed by § 11–4A is within the ambit of the express powers which the General Assembly has delegated to charter home rule counties by Article 25A, § 5(S), it is not a "local law" under Article XI–A of the Constitution, and is, therefore, an invalid enactment.

Our opinion in *McCrory Corp. v. Fowler, supra,* 319 Md. 12, 570 A.2d 834, is on point. One of the issues in *McCrory* was whether a Montgomery County ordinance, which created a private circuit court cause of action to remedy violations of an anti-employment discrimination ordinance, exceeded the authority delegated to charter home rule counties under the Express Powers Act, Article 25A. Upon determining that the ordinance was not a "local law" under Article XI–A of the Constitution, we stated that the "Express Powers Act . . . *could not* authorize Montgomery County to enact the ordinance." 319 Md. at 14, 570 A.2d at 835 (emphasis added). An ordinance enacted by a charter county may be valid only if it is *both* a local law under Article XI–A of the Constitution *and* is authorized by the General Assembly.

Similarly, Montgomery County argues that the General Assembly expressly invited local consumer protection legislation and enforcement because §§ 13–102(b)(1), 13–103(a) and (b) of the Commercial Law Article, Code (1975, 2000 Repl. Vol.), which are part of the State Consumer Protection Act, state that the standards provided therein are "minimum standards" and that a county "may adopt . . . more stringent provisions."[5] Nevertheless, just as the Express Powers Act

---

5. Section 13–102(b)(1) states (emphasis added):

"(b) *Purpose.*—(1) It is the intention of this legislation *to set certain minimum statewide standards* for the protection of consumers across the State, and the General Assembly strongly urges that local subdivisions which have created consumer protection agencies at the local

could not constitutionally authorize Montgomery County to enact a non-local law, the Consumer Protection Act could not constitutionally authorize Montgomery County to enact a consumer protection ordinance which is not a local law.

Section 11–4A of the Montgomery County Code substantially affects persons and entities outside of Montgomery County, many of whom would have little or no connection with Montgomery County. Under our cases, it is not a local law and is facially unconstitutional under Article XI–A of the Maryland Constitution. The enactment of § 11–4A was beyond the constitutionally prescribed legislative authority of the Montgomery County Council. In light of this holding, the other issues raised in this case, including the subject of Montgomery County's cross-appeal, need not be reached. The appellants are entitled to a declaratory judgment that § 11–4A violates Article XI–A of the Maryland Constitution and an injunction restraining the enforcement of § 11–4A.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR THE ENTRY OF ORDERS CONSISTENT WITH THIS OPINION. MONTGOMERY COUNTY TO PAY COSTS.*

---

level encourage the function of these agencies *at least* to the minimum level set forth in the standards of this title."

Section 13–103 (a) and (b) provide (emphasis added):

"(a) *Intent.*—This title is intended *to provide minimum standards* for the protection of consumers in the State.

"(b) *Adoption of more stringent provisions.*—A county, Baltimore City, municipality, or agency of either *may adopt,* within the scope of its authority, *more stringent provisions* not inconsistent with the provisions of this title."