812 A.2d 305

**H.P. WHITE LABORATORY, INC.,**

v.

**James L. BLACKBURN.**

**No. 34, Sept. Term, 2002.**

Court of Appeals of Maryland.

Dec. 11, 2002.

Paul W. Ishak (Stark and Keenan, P.A., on brief), Bel Air, for petitioner.

Judith G. Eagle (Eagle and Guida, on brief), Bel Air, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

Chapter 95 of the Harford County Code, enacted by the Harford County Council, makes unlawful various "Discriminatory Practices," including in § 95–5 certain discriminatory employment practices. Chapter 95, in § 95–11, also makes it unlawful "for any person to retaliate . . . against any person because" the latter has, *inter alia,* filed a complaint alleging a discriminatory practice under Chapter 95. Section 95–7 creates an administrative remedy for "[a]ny person claiming to be aggrieved by an alleged violation of this chapter." In addition, Chapter 95 authorizes civil and criminal penalties for certain violations of the chapter. Finally, § 95–13 provides that the administrative and penal remedies set forth in Chapter 95 are not exclusive and that a party aggrieved by a violation of Chapter 95 may file an action "in law or in equity" in the Circuit Court for Harford County for money damages, including counsel fees, or for injunctive relief.[1]

The respondent, James L. Blackburn, is a former employee of the petitioner, H.P. White Laboratory, Inc. Blackburn brought an action against H.P. White under § 95–13 of the Harford County Code and recovered monetary damages plus attorney's fees based on the jury's determination that H.P. White had retaliated against Blackburn because Blackburn had earlier filed an age discrimination complaint against H.P. White. The sole issue before us in this case is whether § 95–13 is valid under Article XI–A of the Maryland Constitution and, therefore, whether it could validly confer jurisdiction upon the Circuit Court. The Court of Special Appeals held that § 95–13 was valid, and the intermediate appellate court

---

1. Section 95–13 states as follows:

    " § 95–13. Nonexclusiveness of remedies.

    "The provisions of this chapter shall be construed as vesting in all persons the right to be free of any practices within the county which are prohibited herein. Any person who is aggrieved by an act prohibited herein may bring an appropriate action in law or in equity in the Circuit Court for the county to seek damages, including counsel fees, redress of injury or injunctive relief arising out of any act prohibited herein, in addition to pursuing the procedures and seeking the remedies established herein."

affirmed the money judgment in favor of Blackburn based on retaliation in violation of § 95–11. We shall disagree.

## I.

The basic facts of the case were set forth in the unreported opinion of the Court of Special Appeals as follows: [2]

"H. P. White is a testing and research facility located in Harford County, for [which] Blackburn worked as an employee at will until 22 January 1996. Blackburn had not only a history of violating company policy, but had abused in particular H.P. White's paid leave of absence procedures, applicable to all employees. After having been warned of the potential disciplinary actions which would be taken by H.P. White if such conduct continued, Blackburn violated company policy once more. Rather than accept the disciplinary action posed by H.P. White, Blackburn chose not to return to work. At the time of his separation from H.P. White, Blackburn was earning $20.00 per hour, and elected to continue health insurance coverage with H.P. White's insurer, and H. P White continued to finance ... that coverage. Claiming to have been a victim of age discrimination, Blackburn filed a complaint form with the Harford County Human Relations Commission on 22 March 1996, and in March, 1996 began receiving unemployment benefits. On 5 April 1996, Blackburn filed a claim with the Division of Labor and Industry, attempting to collect 84.5 hours of unpaid and accrued vacation pay, but that claim was abandoned.

"On 6 May 1996, Blackburn filed a Complaint in the ... District Court [of Maryland], claiming constructive discharge, and 84.5 hours of unpaid and accrued vacation pay. This claim was voluntarily dismissed. In September, 1996, Blackburn obtained a job with Tero–Tek.

---

**2.** The language in brackets represents our modifications and additions to the Court of Special Appeals' statement of the facts.

"On 10 October 1996, Blackburn filed a Complaint in the Circuit Court for Harford County charging H.P. White with age discrimination based on a violation of Chapter 95 of the Harford County Code, constructive discharge, and violations of the Maryland Wage Payment and Collection Act.

"On 25 November 1996, Blackburn amended his Complaint alleging age discrimination based on a violation of Chapter 95 of the Harford County Code, breach of the Maryland Wage Payment and Collection Act, breach of contract and wrongful discharge. By this time, the Harford County Human Relations Commission (HCHRC), had completed its investigation and on 27 December 1996 issued its written report finding no age discrimination by H.P. White. [Blackburn did not seek judicial review of this decision].

"In January of 1997, while still employed with Tero–Tek, as was evident from his pay stubs, Blackburn sought employment with Alcore, listing H.P. White as a reference. On 13 January 1997, Alcore conducted a telephone interview with H.P. White. During that interview, the Alcore employee described H.P. White's President as very aggressive and very eager to tell Alcore that Blackburn currently had a lawsuit for age discrimination pending against H.P. White. Overall, H.P. White was a negative reference, as it related to Blackburn's absenteeism.

"On 1 December 1997, Blackburn amended his Complaint, maintaining the same four counts listed, but adding language to the age discrimination count that H.P. White had retaliated against Blackburn in violation of Chapter 95 of the Harford County Code, specifically citing a violation of Chapter 95–11 . . . . Similar language was added to the Maryland Wage Payment and Collection Act count. Prior to 1 December 1997, Blackburn had filed no discrimination complaint with any administrative agency charging H.P. White with retaliation. Unknown to H.P. White, the HCHRC had earlier suggested that Blackburn file his discrimination claim at the State or Federal level. Not only did Blackburn not do so, he replied in writing to the HCHRC that he could not wait for the State or Federal agencies to act.

·"In response to Blackburn's claims, H.P. White took the position that a suit for damages claiming it had violated the Harford County Code was not appropriate [because of lack of jurisdiction], and that there had been no wrongful discharge and that there was a bona fide dispute whether Blackburn was entitled to 84.5 hours of accrued vacation pay. Of course, Blackburn disagreed, and the case proceeded to trial."

The case went to trial before a jury on four counts. Count one charged age discrimination and retaliation in violation of Chapter 95 of the Harford County Code, and the asserted right to damages was premised entirely on § 95–13 of the Code. Count two alleged a breach of the Maryland Wage Payment and Collection Law,[3] and count three alleged that H.P. White had breached the employment contract with respect to accrued vacation pay. Count four asserted a common law wrongful discharge cause of action.

At the close of the plaintiff's case, the trial judge dismissed the count four wrongful discharge claim, and, after the close of all of the evidence, the judge dismissed count two alleging a violation of the Maryland Wage Payment and Collection Law. Count one, charging age discrimination and retaliation in violation of Chapter 95 of the Harford County Code, and count three concerning vacation pay, were allowed to be submitted to the jury. Prior to the jury instructions, the parties stipulated that the jury should determine liability upon the claims submitted to it and that the trial judge should thereafter determine damages upon each claim under which liability was found.

The jury found that H.P. White had not engaged in age discrimination. The jury did find, however, that H.P. White retaliated against Blackburn, in violation of § 95–11 of the Harford County Code, because Blackburn had "filed this case of age discrimination." The jury also found that H.P. White

---

**3.** *See* Maryland Code (1991, 1999 Repl.Vol.), §§ 3–501 through 3–509 of the Labor and Employment Article.

"breached its contractual promise to pay ... Blackburn the value of vacation leave due him of 42 hours at $20 per hour." The trial judge determined that Blackburn was entitled to $101,257.42 on the retaliation claim, $136.74 on the vacation pay claim, and $3,800.00 in attorney fees. The total judgment entered against H.P. White was $105,194.16.

H.P. White took an appeal to the Court of Special Appeals, raising numerous issues, including the contention that § 95–13 of the Harford County Code was unconstitutional and, therefore, could not confer on the Circuit Court jurisdiction to entertain the action for retaliation in violation of § 95–11 of the Code. H.P. White relied extensively upon this Court's opinions in *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), and *Sweeney v. Hartz Mountain Corp.*, 319 Md. 440, 573 A.2d 32 (1990), in which this Court ruled on the validity of charter county ordinances creating new judicial causes of action in the circuit courts based on claims of discrimination. (Appellant's brief in the Court of Special Appeals at 7, 8, 9). Blackburn filed a cross-appeal with regard to the calculation of breach of contract damages and the attorney fee award. Blackburn did not, however, challenge the adverse determinations on his age discrimination claim, his Maryland Wage Payment and Collection Law claim, and his common law wrongful discharge claim. Consequently, those determinations became final.

The Court of Special Appeals, in an unreported opinion, affirmed the award of $101,257.42 in retaliation damages, stating: "We hold that the Circuit Court for Harford County has subject matter jurisdiction over civil actions claiming damages based on a violation of Chapter 95 of the Harford County Code...." The intermediate appellate court indicated that, if § 95–13 did not validly authorize a judicial remedy, there might not be a satisfactory remedy. The Court of Special Appeals continued: "When an employer retaliates against a former employee for protesting age discrimination in good faith, that retaliation cries out for a remedy."

The Court of Special Appeals did reverse the award for vacation pay under the breach of contract count, holding that the trial court's resolution of the Maryland Wage Payment and Collection Law count rendered the vacation pay award "inappropriate." The Court of Special Appeals also vacated the $3,800.00 attorney fee award and remanded the "matter" to the Circuit Court for further proceedings, indicating that the award was inadequate because the trial court did not sufficiently "consider [ ] appellee's counsel's efforts over a period of at least five years, including a lengthy trial...."

H.P. White filed in this Court a petition for a writ of certiorari, challenging the retaliation judgment and the award of counsel fees under § 95–13 of the Harford County Code. H.P. White's petition presented a single question, namely whether § 95–13 is constitutional under the holdings in *McCrory Corp. v. Fowler, supra,* 319 Md. 12, 570 A.2d 834, and *Sweeney v. Hartz Mountain Corp., supra,* 319 Md. 440, 573 A.2d 32. Blackburn did not file a cross-petition for a writ of certiorari, and, consequently, the Court of Special Appeals' decision in favor of H.P. White on the breach of contract count became final. This Court granted H.P. White's certiorari petition, *White Labs. v. Blackburn,* 369 Md. 571, 801 A.2d 1031 (2002).

## II.

Harford County is a chartered home rule county under Article XI–A of the Maryland Constitution. *Save Our Streets v. Mitchell,* 357 Md. 237, 743 A.2d 748 (2000). Article XI–A, or the Home Rule Amendment as it is sometimes called, "enables those counties adopting a home rule charter to enjoy a significant amount of self-governance by transferring the General Assembly's power to enact many types of public *local* laws to the home rule counties themselves." *Montrose Christian School v. Walsh,* 363 Md. 565, 579, 770 A.2d 111, 119 (2001) (emphasis supplied).

As made clear by the language of Article XI–A, § 3, of the Constitution, however, the law-making authority of a home

rule county is limited to the "power to enact *local* laws of said
. . . County" (emphasis supplied). *See Montgomery County v.
Broadcast Equities,* 360 Md. 438, 441 n. 1, 758 A.2d 995, 996 n.
1 (2000), in which we recently stated:

> "Article XI–A, § 3, of the Maryland Constitution, *inter
> alia,* grants to the county council of a charter county 'full
> power to enact local laws of said . . . County . . . upon all
> matters covered by the express powers granted' to charter
> counties. If, however, an ordinance enacted by a charter
> county does not constitute a 'local law' within the meaning
> of Article XI–A, it is beyond the authority of a charter
> county and, therefore, is unconstitutional. *See McCrory
> Corp. v. Fowler,* 319 Md. 12, 17–24, 570 A.2d 834, 836–840
> (1990), and cases there cited."

In *McCrory Corp. v. Fowler, supra,* this Court held that
§ 27–20(a) of the Montgomery County Code, which had been
enacted by the Montgomery County Council, was not a "local
law" within the meaning of Article XI–A of the Maryland
Constitution and that, therefore, the ordinance was unconstitu-
tional. Section 27–20(a), involved in *McCrory,* 319 Md. at 15,
570 A.2d at 835, provided:

> " 'Any person who has . been subjected to any act of
> discrimination prohibited under this division shall be
> deemed to have been denied a civil right and shall be
> entitled to sue for damages, injunction or other civil relief,
> including reasonable attorney's fees; provided, however,
> that no suit shall be commenced until forty-five (45) days
> after a complaint alleging such an act of discrimination has
> been filed with the commission. . . .' "

In holding that the above-quoted provision was not a "local
law," we reasoned in *McCrory* as follows (319 Md. at 19–21,
570 A.2d at 837–838):

> "Section 27–20(a) of the Montgomery County Code autho-
> rizes a private citizen to seek redress for another private
> citizen's violation of a county anti-employment discrimina-
> tion ordinance by instituting a judicial action in the courts of
> the State for, *inter alia,* unlimited money damages. Fowl-

er, for example, is seeking over $1.8 million. While a plaintiff must first file a complaint with an administrative agency, he is free to institute a civil action after forty-five days have elapsed. In the present case, the administrative agency followed its standard policy and closed Fowler's complaint when he 'decided to pursue his claim in a judicial forum.' Thus, the judicial action is effectively independent of any county administrative proceeding.

"In creating a new judicial cause of action between private individuals, § 27–20(a) encroaches upon an area which heretofore had been the province of state agencies. In Maryland, the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State. *See, e.g., Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981) (recognizing tort actions for abusive discharge). Furthermore, the creation of new judicial remedies has traditionally been done on a statewide basis.

"Abusive employment practices constitute a statewide problem which has been addressed by the General Assembly in Article 49B of the Maryland Code and by this Court in *Adler v. American Standard Corp., supra.* It is true that the field has not been preempted by the State, and that home rule counties have concurrent authority to provide administrative remedies not in conflict with state law. Nevertheless, creating a remedy which has traditionally been the sole province of the General Assembly and the Court of Appeals, to combat a statewide problem such as employment discrimination, goes beyond a 'matter[ ] of purely local concern.' *State v. Stewart, supra,* 152 Md. at 422, 137 A. at 41 . . . . [Section] 27–20(a) of the Montgomery County Code affects 'matters of significant interest to the entire state' and cannot qualify as a 'local law' under Article XI–A.

"A contrary holding would open the door for counties to enact a variety of laws in areas which have heretofore been viewed as the exclusive province of the General Assembly and the Court of Appeals. For example, could a county

ordinance authorize in the circuit court and the District Court negligence actions in which contributory negligence would not be a bar? Could a county ordinance provide for breach of contract suits upon 'contracts' not supported by consideration, or where the parol evidence rule is inapplicable? We believe that the answer is 'no.' These, and many other legal doctrines, are matters of significant interest to the entire State, calling for uniform application in state courts. They are not proper subject matters for 'local laws.' "

Later, in *Sweeney v. Hartz Mountain Corp., supra,* we held that the following provision of the Howard County Code, enacted by the County Council, was not a local law and thus violated Article XI–A of the Constitution (319 Md. at 442, 573 A.2d at 33):

"Section 12.217. Nonexclusive remedy.

"I. *Rights:* The provisions of this subtitle vest in all persons in Howard County the right to be free of any practices prohibited by this subtitle.

"II. *Action at Law:* Any person who is aggrieved by an act prohibited by this subtitle may bring an action in law or in equity in the Circuit Court for Howard County to seek damages, including counsel fees, redress of injury or injunctive relief arising out of any such prohibited act.

"III. *Action at Law Plus Remedies of This Subtitle:* The action in the Circuit Court for Howard County shall be in addition to pursuing the procedures and seeking the remedies set forth in this subtitle."

Except for the provision in the Montgomery County Code for a 45–day waiting period, the Montgomery County provision invalidated in *McCrory* is the same as § 95–13 of the Harford County Code. In substance, the Howard County provision invalidated in the *Sweeney* case is the same as § 95–13 of the Harford County Code. The opinions in *McCrory* and *Sweeney* compel us to hold that § 95–13 of the Harford

County Code is not a local law and is, therefore, unconstitutional under Article XI–A of the Maryland Constitution.[4]

The retaliation damages and the attorney fees awarded to Blackburn, claimed in count one of the complaint, were based entirely on an asserted right of action under § 95–13 of the Harford County Code. Since § 95–13 is invalid, the Circuit Court had no jurisdiction over count one and no authority to award damages and attorney fees for violations of Chapter 95 of the Harford County Code.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE IN PART AND AFFIRM IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY, AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO DISMISS COUNT ONE AND TO ENTER JUDGMENT FOR THE DEFENDANT ON THE REMAINING COUNTS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT JAMES L. BLACKBURN.*

---

4. Subsequent to the *McCrory* and *Sweeney* decisions, the General Assembly enacted Maryland Code (1957, 1998 Repl.Vol.), Art. 49B, §§ 42 and 43, which authorize civil actions based on discrimination in violation of the Montgomery County, Prince George's County, Howard County, and Baltimore County Codes. The General Assembly has not authorized such an action in Harford County.