841 A.2d 845

**EDWARDS SYSTEMS TECHNOLOGY, et al.**

v.

**Cynthia CORBIN.**

**No. 102, Sept. Term, 2002.**

Court of Appeals of Maryland.

Feb. 10, 2004.

Brian Steinbach (Howard A. Wolf–Rodda of Epstein, Becker & Green, P.C., on brief), of Washington, DC, for petitioners.

Suzanne M. Tsintolas (The Law Office of Suzanne M. Tsintolas, on brief), of Rockville, for respondent.

Arthur B. Spitzer, American Civil Liberties Union of the National Capital Area, Jonathan J. Frankel, Jeffrey P. Schomig, Ron B. Katwan, Brian W. Murray, Wilmer, Cutler & Pickering, Washing ton, DC, Susan Goering, American Civil Liberties Union of Maryland Foundation, Debra Gardner, Wendy Hess, Public Justice Center, Baltimore, Brief of Amici Curiae American Civil Liberties Union of the National Capital Area, American Civil Liberties Union of Maryland Foundation, and the Public Justice Center.

J. Joseph Curran, Jr., Attorney General of Maryland, Andrew H. Baida, Solicitor General, William F. Brockman, Assistant Attorney General, Brief of the State of Maryland as Amicus Curiae.

Edward J. Gilliss, County Attorney for Baltimore County, Towson, Barbara M. Cook County Solicitor for Howard County, Ellicott City, Brief of Amici Curiae Baltimore County, Howard County, Montgomery County, and Prince George's County, Maryland.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

In this case, the petitioners contend that the combined operation of Prince George's County anti-discrimination ordinances and a state statute violates Article XI–A of the Maryland Constitution. The state statute, Maryland Code (1957, 2003 Repl.Vol.), Art. 49B, § 42, authorizes, in three Maryland counties, the enforcement of local anti-discrimination ordinances by causes of action in the circuit courts.

## I.

The facts of this case, which are not in dispute, were set forth in the unreported opinion of the Court of Special Appeals as follows:

"Appellant, Cynthia Corbin, is a black female. On March 11, 1996, she was hired by EST [Edwards Systems Technology, Inc.] as a Service Agreement Sales Specialist. On December 30, 1996, Corbin was promoted to the position of Operations Manager for EST's Services Division's Washington, D.C. branch.[1]

"While Corbin held the position of Operations Manager, appellee Anderson, a white male, was employed as EST's

---

* Eldridge, Judge, now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. While referred to as the "Washington, D.C. branch," according to the complaint the office where Corbin worked, and where the events giving rise to this action occurred, was located in Beltsville, Prince George's County, Maryland. The defendants have not disputed this allegation.

District Manager. Corbin lodged numerous complaints to Anderson and his superiors about alleged discriminatory practices and about Anderson's billing and contract-letting practices.

"In August 1997, Anderson informed Corbin that EST would demote her to the position of Service Agreement Sales Specialist. Anderson further noted that he would take the position that she would be forced to vacate. Consequently, Corbin contacted the Regional Manager, who confirmed that the company was demoting Anderson because he was unable to perform the duties of District Manager in a satisfactory manner. The demotions became effective in late February 1998. Corbin assumed the position of Customer Service Specialist and Anderson became the Operations Manager for the Services Division's Washington, D.C. branch.

"Corbin alleges that from February 1998 to March 1999, Anderson consistently assigned his duties as Operations Manager to her. As a result, tensions continued to rise between the two parties and Corbin informed the Branch Manager and his supervisors that she was doing the brunt of Anderson's work and should be reassigned to the position.

"Corbin further alleges that on February 19, 1999, she approached Anderson to inquire as to what employees would be attending an upcoming trade show. Despite the fact that, as a member of the sponsor organization, she requested to attend, Anderson did not respond.

"Subsequently, on February 25, 1999, the day of the trade show, at approximately 8:20 a.m., Anderson entered Corbin's office to ask her for a trade show video. As Anderson was exiting the office, he stopped to ask if Corbin was planning on attending the trade show that day. Corbin informed Anderson that she did not plan on attending because he had not responded to her request to attend and as a result she did not obtain a ticket. Anderson insisted that she did not need a ticket to enter, but Corbin insisted

otherwise. Anderson then threw a ticket in Corbin's direction, voiced his displeasure with Corbin, and left.

"Corbin subsequently walked to Anderson's office to return the ticket and inform him that she would not be attending. Corbin claims that as she left the office Anderson followed her and began shouting at her. Anderson continued to follow Corbin into her office and continued to yell. Corbin further alleged ... that Anderson slammed his fist on her desk and attempted to prevent her from leaving the office. Despite his presence, Corbin did leave the office. Anderson followed so Corbin returned to her office and locked the door. She then telephoned Corporate Headquarters to report the incident."

Corbin filed a six-count complaint in the Circuit Court for Prince George's County, asserting claims against Edwards Systems and Anderson, and seeking money damages. In the first three counts, Corbin alleged that Edwards Systems violated Division 12, § 2–185, *et seq.* of the Prince George's County Code (1999), and specifically §§ 2–186(a)(3) and 2–222 which define and prohibit discrimination in employment.[2] Count one claimed that Edwards Systems demoted Corbin because of her race and sex, and count two alleged harassment and discrimination based on race and marital status. Count

---

**2.** Division 12 of the Prince George's County Code provides in pertinent part as follows:

"**Sec. 2–186. Definitions.**

(a) As used in this Division:

(3) **Discrimination** shall mean acting, or failing to act, or unduly delaying any action regarding any person because of race, religion, color, sex, national origin, age (except as required by State or federal law), occupation, familial status, marital status, political opinion, personal appearance, sexual orientation, or physical or mental handicap, in such a way that such person is adversely affected in the areas of housing and residential real estate, employment, law enforcement, education, financial lending, public accommodations, or commercial real estate."

"**Sec. 2–222. Discrimination in employment prohibited.**

"No employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify or assign employees because of discrimination."

three stated that the employer failed to provide reasonable accommodation for a disability. Corbin's asserted causes of action against Edwards Systems, encompassed by the first three counts, were based upon the state statute, Maryland Code (1957, 2003 Repl.Vol.), Art. 49B, § 42, coupled with §§ 2–186(a)(3) and 2–222 of the Prince George's County Code.[3] The remaining three counts initially alleged "common law" causes of action against Anderson. Count four was based upon an alleged civil assault; count five asserted intentional infliction of emotional distress, and count six charged "racial harassment."

On April 10, 2000, both defendants filed a Motion to Dismiss. They argued that counts one, two, and three should be dismissed because they were predicated on the combined operation of Art. 49B, § 42, and the local anti-discrimination law, and that this combined operation violated Article XI–A of the Maryland Constitution as applied in *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990). In addition, the

---

**3.** Article 49 B, § 42, provides as follows:

" **§ 42. Civil actions for discriminatory acts-Montgomery County, Prince George's County, and Howard County.**

"(a) *Authorized.*—In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

"(b) *Limitations periods.*—(1) An action under subsection (a) of this section shall be commenced in the circuit court for the county in which the alleged discrimination took place not later than 2 years after the occurrence of the alleged discriminatory act.

"(2) Subject to the provisions of paragraph (1) of this subsection, an action under subsection (a) of this section alleging employment or public accommodation discrimination may not be commenced sooner than 45 days after the aggrieved person files a complaint with the county agency responsible for handling violations of the county discrimination laws.

"(3) Subject to the provisions of paragraph (1) of this subsection, an action under subsection (a) of this section alleging real estate discrimination may be commenced at any time.

"(c) *Fees and costs.*—In a civil action under this section, the court, in its discretion, may allow the prevailing party reasonable attorney's fees, expert witness fees, and costs."

defendants maintained that count two failed to state a claim against Edwards Systems for harassment and discrimination based on marital status. Finally, they asserted that counts three through six failed to state a claim.

After the filing of Corbin's opposition to the motion to dismiss and the submission of several memoranda, the Circuit Court held a hearing on October 6, 2000. During the hearing, Corbin "withdrew" count three. Corbin also stated that count six, setting forth an alleged cause of action for "racial harassment," was against both Edwards Systems and Anderson and was based on the same statutory provisions as counts one and two. The Circuit Court at the hearing decided that counts four, five, and six would be dismissed for failure to state a claim, although the dismissal of count six would be with leave to amend. Corbin requested that the dismissal of count four be with leave to amend, but the court denied this request. The Circuit Court also dismissed counts one, two, and six on the ground that Art. 49B, § 42, coupled with the local anti-discrimination ordinances, violated Article XI–A of the Maryland Constitution. The dismissal of counts one and two was also with leave to amend, in order for the plaintiff to allege discrimination claims under federal law if she chose to do so.

The determinations made at the October 6th hearing were recorded on a separate document that day and were thereafter duly entered on the docket. Nevertheless, there was no appealable final judgment at that time because of the leave to amend counts one, two, and six. *Makovi v. Sherwin–Williams Co.*, 311 Md. 278, 281–282, 533 A.2d 1303, 1305 (1987), and cases there cited.

Within ten days of the October 6, 2000, determinations, Corbin filed in the Circuit Court a motion to reconsider the dismissals of counts one, two, and six, and to reconsider the denial of leave to amend with regard to count four. At about the same time, the defendants removed the case from the Circuit Court for Prince George's County to the United States District Court for the District of Maryland. The case was docketed in the United States District Court on October 16,

2000. The defendants also filed an opposition to Corbin's motion for reconsideration. Next, on December 26, 2000, the United States District Court remanded the case to the Circuit Court for Prince George's County for further proceedings in the latter court, holding that "the case was wrongly removed from the Circuit Court for Prince George's County."

The plaintiff Corbin decided not to amend her complaint, and on April 16, 2001, the circuit judge signed an "Order" denying Corbin's motion to reconsider and effectively terminating the action in the Circuit Court. The order was filed and entered on the docket on April 17, 2001. Thereafter, Corbin took a timely appeal to the Court of Special Appeals, challenging the dismissal on state constitutional grounds of counts one, two, and six, and challenging the trial judge's denial of leave to amend with respect to count 4. The Court of Special Appeals, agreeing with Corbin's arguments, reversed the judgment of the Circuit Court for Prince George's County. The intermediate appellate court held that Art. 49B, § 42, coupled with the Prince George's County anti-discrimination ordinances, did not violate Article XI–A of the Maryland Constitution, and that the Circuit Court erred in dismissing counts one, two, and six on the ground that the above-mentioned statutes violated the Constitution. In addition, the Court of Special Appeals held that the Circuit Court abused its discretion by refusing leave to amend count four of the complaint.[4]

---

4. The Court of Special Appeals also addressed the appealability of the Circuit Court's April 16, 2001, order. While not viewing the order as a final judgment, the Court of Special Appeals took the position that it could enter a final judgment pursuant to Maryland Rule 8–602(e)(1)(C). Although we do not believe that Rule 8–602(e)(1)(C) is applicable to the present situation, we do believe that the April 16, 2001, order effectively terminated the case in the Circuit Court and was, therefore, a final appealable judgment. *See Houghton v. County Comm'rs of Kent Co.,* 305 Md. 407, 412–413, 504 A.2d 1145, 1148 (1986) ("The order ... had the effect of putting the plaintiff out of court. Nothing remained to be done. * * * Nothing in [the rules] ... requires that the word 'judgment' always be used as a prerequisite to finality").

■ The defendants filed in this Court a petition for a writ of certiorari, presenting the single issue of whether the Court of Special Appeals erred in holding that the cause of action authorized by Art. 49B, § 42, combined with the Prince George's County anti-discrimination ordinances, did not violate Article XI–A of the Maryland Constitution. The certiorari petition did not present any other constitutional or non-constitutional issues, and did not challenge the Court of Special Appeals' decision regarding leave to amend count four of the complaint. The plaintiff Corbin did not file a cross-petition for a writ of certiorari presenting any additional issues. We granted the petition, *Edwards Systems v. Corbin*, 372 Md. 429, 813 A.2d 257 (2002), and shall affirm the judgment of the Court of Special Appeals.[5]

## II.

Before addressing the petitioners' argument based on Article XI–A of the Maryland Constitution, it would be useful to review the constitutional background and the case on which the petitioners chiefly rely, *McCrory Corp. v. Fowler, supra,* 319 Md. 12, 570 A.2d 834.

Prince George's County is a chartered home rule county under Article XI–A of the Maryland Constitution. In *McCrory Corp. v. Fowler,* involving a Montgomery County ordinance,

---

5. The defendants-petitioners in their brief in this Court, for the first time, argue that Art. 49B, § 42, "by selectively extending a right of action to residents of some, but not all, of Maryland's counties, violates the equal protection guarantees embodied in Article 24 of the Maryland Declaration of Rights." (Petitioners' brief at 18). As this issue was not presented in the certiorari petition, a cross-petition, or added by order of this Court, it is not properly before us, and we intimate no opinion on the issue. *See, e.g.,* Maryland Rule 8–131(b); *Baltimore Teachers Union v. Maryland State Board of Education,* 379 Md. 192, 840 A.2d 728 (2004); *Brooks v. Lewin Realty,* 378 Md. 70, 75, 835 A.2d 616, 619 (2003); *State v. Chaney,* 375 Md. 168, 174, 825 A.2d 452, 455 (2003); *Robinson v. Bunch,* 367 Md. 432, 439–441, 788 A.2d 636, 641–642 (2002); *Lovelace v. Anderson,* 366 Md. 690, 712, 785 A.2d 726, 739 (2001); *Wynn v. State,* 351 Md. 307, 319–325, 718 A.2d 588, 594–597 (1998); *Robeson v. State,* 285 Md. 498, 501–503, 403 A.2d 1221, 1222–1224 (1979).

we set forth the history and purpose of Article XI–A as follows (319 Md. at 16–17, 570 A.2d at 835–836):

"Article XI–A was proposed by Ch. 416 of the Laws of Maryland of 1914 and ratified by the voters on November 2, 1915. The Article, known as the Home Rule Amendment, enabled counties, which chose to adopt a home rule charter, to achieve a significant degree of political self-determination. Its purpose was to transfer the General Assembly's power to enact many types of county public local laws to the Art. XI–A home rule counties. *See generally, e.g., Bd. of Election Laws v. Talbot County,* 316 Md. 332, 344, 558 A.2d 724 (1988); *Griffith v. Wakefield,* 298 Md. 381, 384, 470 A.2d 345 (1984); *Town of Forest Heights v. Frank,* 291 Md. 331, 342, 435 A.2d 425 (1981); *Cheeks v. Cedlair Corp.,* 287 Md. 595, 597–598, 415 A.2d 255 (1980). As the Court explained in *State v. Stewart,* 152 Md. 419, 422, 137 A. 39, 41 (1927) (emphasis supplied):

'The wisdom of incorporating in the organic law of the state such provisions as are contained in this article had been urged for a number of years prior to its adoption, the reasons assigned by its proponents being that a larger measure of home rule be secured to the people of the respective political subdivisions of the state *in matters of purely local concern,* in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as "log-rolling"; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested.'

"Sections 1 and 1A of Article XI–A empower Baltimore City and the counties of Maryland to adopt a charter form of local government. Section 2 directs the General Assembly

to provide a grant of express powers for charter home rule counties. The General Assembly followed that directive and enacted the Express Powers Act by Ch. 456 of the Laws of Maryland of 1918, codified as Code (1957, 1987 Repl.Vol.), Art. 25A. Section 3 of Article XI–A provides (emphasis supplied):

> 'From and after the adoption of a charter by the City of Baltimore, or any County of this State, as hereinbefore provided, the Mayor of Baltimore and City Council of the City of Baltimore or the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact *local laws* of said city or county ... upon all matters covered by the express powers granted as above provided....'

> "Article XI–A 'does not constitute a grant of absolute autonomy to local governments.' *Ritchmount Partnership v. Board,* 283 Md. 48, 56, 388 A.2d 523, 529 (1978). This Court's decisions and the above-quoted passage make it clear that the Home Rule Amendment limits the ... County Council to enacting 'local laws' on matters covered by the Express Powers Act."

\* \* \*

> "In prohibiting the General Assembly from enacting public local laws for Baltimore City and charter home rule counties on subjects covered by the Express Powers Act, Section 4 of Article XI–A states that '[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act.' As this Court has pointed out, '[a]part from that limitation, [Article XI–A] attempts no definition of the distinction between a local law and a general law, but leaves that question to be determined by the application of settled legal principles to the facts of particular cases in which the distinction may be involved.' *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534, 537–538 (1936)."

For more recent discussions concerning Article XI–A, *see Piscatelli v. Board of Liquor License Commissioners,* 378 Md.

623, 633–634, 837 A.2d 931, 937–938 (2003); *Holiday v. Montgomery County,* 377 Md. 305, 313–319, 833 A.2d 518 (2003); *H.P. White v. Blackburn,* 372 Md. 160, 167–171, 812 A.2d 305 (2002); *Tyma v. Montgomery County,* 369 Md. 497, 504–514, 801 A.2d 148 (2002); *Montrose Christian School v. Walsh,* 363 Md. 565, 579, 770 A.2d 111, 119 (2001).

*McCrory Corp. v. Fowler, supra,* concerned the validity of a Montgomery County ordinance which created a new circuit court cause of action by one who had been discriminated against in violation of the Montgomery County Code. Robert Fowler, a manager of a McCrory Corporation store in Montgomery County, alleged that McCrory harassed and thereafter constructively discharged him in retaliation for his refusal to implement McCrory's alleged discriminatory hiring practices. Fowler filed, in the Circuit Court for Montgomery County, an action against McCrory under, *inter alia,* § 27–20(a) of the Montgomery County Code, which created a new circuit court cause of action to remedy the violation of the local anti-discrimination ordinances. Section 27–20(a) of the Montgomery County Code, which had been enacted by the Montgomery County Council, authorized the recovery of money damages without any statutory limitations, or an injunction, or "other civil relief, including reasonable attorney's fees." Fowler sought to recover over $1.8 million in compensatory and punitive damages.

The *McCrory* case was removed from the Circuit Court to the United States District Court for the District of Maryland. The federal court subsequently certified to this Court questions concerning the validity, under both state public general law and under the Maryland Constitution, of § 27–20(a) of the Montgomery County Code which created the cause of action.

After emphasizing in *McCrory* that Article XI–A of the Maryland Constitution authorized chartered county councils to enact only "local laws," we turned to the issue of whether § 27–20(a) of the Montgomery County Code was a "local law" within the meaning of Article XI–A. We initially pointed out that "[s]everal decisions by this Court illustrate that laws,

which may appear to be local in form, might not constitute 'local laws' under Article XI–A." *McCrory,* 319 Md. at 18, 570 A.2d at 837. The *McCrory* opinion continued: " '[A] law is not necessarily a local law merely because its operation is confined . . . to a single county, if it affects the interests of the people of the whole State.' " *Ibid.,* quoting *Gaither v. Jackson,* 147 Md. 655, 667, 128 A. 769, 773 (1925). *See also Holiday v. Montgomery County, supra,* 377 Md. at 319, 833 A.2d at 526–527, where the Court recently stated that, if a chartered county ordinance "substantially affects persons and entities outside of [the] County," then "it is not a local law and is facially unconstitutional under Article XI–A of the Maryland Constitution."

The *McCrory* opinion then pointed out, 319 Md. at 20, 570 A.2d at 838, that chartered counties could enact anti-discrimination ordinances, could authorize adjudicatory administrative proceedings to enforce such ordinances, and could provide for traditional judicial review actions to review the administrative decisions. Nevertheless, the *McCrory* Court held that the creation of "new" judicial causes of action "encroaches upon an area which heretofore had been the province of state agencies. In Maryland, the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State." *Ibid.* The Court stated that (319 Md. at 20–21, 570 A.2d at 838)

" § 27–20(a) of the Montgomery County Code affects 'matters of significant interest to the entire state' and cannot qualify as a 'local law' under Article XI–A.

"A contrary holding would open the door for counties to enact a variety of laws in areas which have heretofore been viewed as the exclusive province of the General Assembly and the Court of Appeals. For example, could a county ordinance authorize in the circuit court and the District Court negligence actions in which contributory negligence would not be a bar? Could a county ordinance provide for breach of contract suits upon 'contracts' not supported by consideration, or where the parol evidence rule is inapplica-

ble? We believe that the answer is 'no.' These, and many other legal doctrines, are matters of significant interest to the entire State, calling for uniform application in state courts. They are not proper subject matters for 'local laws.' "

Shortly after the *McCrory* decision, this Court in *Sweeney v. Hartz Mountain Corp.*, 319 Md. 440, 444, 573 A.2d 32, 33 (1990), held that an ordinance enacted by the Howard County Council, similar to the ordinance involved in *McCrory*, and "authorizing an independent action in law or equity in the Circuit Court for Howard County," was not a "local law" and thus violated Article XI–A of the Constitution. *See also H.P. White v. Blackburn, supra,* 372 Md. at 167–171, 812 A.2d at 309–311, holding that a Harford County ordinance, authorizing a circuit court action to recover damages, by a plaintiff who has been discriminated against in violation of the Harford County Code, was not a "local law" and therefore was invalid under Article XI–A of the Maryland Constitution.

In response to the decisions in the *McCrory* and *Sweeney* cases, the General Assembly enacted Art. 49B, § 42. As previously quoted, *supra,* n. 3, § 42 provides that, in Montgomery, Prince George's, and Howard Counties, "a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief." Subsection (b)(1) of § 42 states that the action "shall be commenced in the circuit court for the county in which the alleged discrimination took place" and "not later than 2 years after the occurrence of the alleged discriminatory act." [6]

---

**6.** Section 2–200 of the Prince George's County Code, like the ordinances involved in *McCrory Corp. v. Fowler,* 319 Md. 12, 570 A.2d 834 (1990), *Sweeney v. Hartz Mountain Corp.,* 319 Md. 440, 573 A.2d 32 (1990), and *H.P. White v. Blackburn,* 372 Md. 160, 812 A.2d 305 (2002), also purports to create an "action in law or equity in the Circuit Court to seek damages, redress of injury, or injunctive relief arising out of" a discriminatory act in violation of Division 12 of the Prince George's County Code.

Sections 2–186(a)(3) and 2–222 of the Prince George's County Code, quoted earlier, *supra,* n. 2, prohibit discrimination in employment in Prince George's County. "Discrimination" is broadly defined as acting, failing to act, or delaying any action, "because of race, religion, color, sex, national origin, age (except as required by State or federal law), occupation, familial status, marital status," etc.

Section 2–222 of the Prince George's County Code begins by stating that "[n]o employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment . . . because of discrimination." The language "[n]o employer in the County" may be ambiguous with regard to discriminatory acts outside of Prince George's County by employers with a presence in the County.[7] If § 2–222 were construed to have a significant territorial effect beyond Prince George's County, it would not be a "local" law and thus would be unconstitutional under Article XI–A of the Maryland Constitution. *See Holiday v. Montgomery County, supra,* 377 Md. 305, 833 A.2d 518, and cases there cited.

This Court has consistently adhered to the principle that "an interpretation which raises doubts as to a legislative enactment's constitutionality should be avoided if the language of the act permits." *Harryman v. State,* 359 Md. 492, 509, 754

---

Under the holdings in the above-cited cases, this provision of the Prince George's County Code violates Article XI–A of the Maryland Constitution and is, therefore, void. Nevertheless, the plaintiff's action in the case at bar is not dependent on § 2–200 of the Prince George's County Code. Instead, it is based on Art. 49B, § 42, and §§ 2–186(a)(3) and 2–222 of the Prince George's County Code.

**7.** The petitioners at one place in their brief suggest that, under Art. 49B, § 42, and § 2–222 of the Prince George's County Code, a discriminatory act outside of Prince George's County, by a Prince George's County employer, could be the basis for the § 42 action and that the suit would be brought in the circuit court for the county where the discriminatory act occurred. (Petitioners' brief at 16). At another place in their brief, however, the petitioners take the position that Art. 49B, § 42, covers only discriminatory acts taking place in Prince George's, Montgomery, and Howard counties. (Petitioners' brief at 19).

A.2d 1018, 1028 (2000). *See, e.g., Tidewater v. Mayor of Havre de Grace,* 337 Md. 338, 352, 653 A.2d 468, 475 (1995) ("[I]t is the policy of this Court to favor an interpretation that upholds the validity of an ordinance"); *Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93, 104–105 (1994) ("If a statute is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality"); *Schochet v. State,* 320 Md. 714, 725–726, 580 A.2d 176, 181 (1990), and cases there cited. In light of this principle, we construe § 2–222 as covering only discrimination occurring in Prince George's County by an employer with a significant presence in Prince George's County.

■ As construed, the alleged discrimination in the case at bar is encompassed by §§ 2–186(a)(3) and 2–222 of the Prince George's County Code, and a cause of action based on such discrimination has been created by Art. 49B, § 42, of the Maryland Code.

### III.

The petitioners' argument that Art. 49B, § 42, coupled with §§ 2–186(a)(3) and 2–222 of the Prince George's County Code, violates Article XI–A of the Maryland Constitution, is somewhat elusive. Nonetheless, we shall attempt to set forth and answer the petitioners' contentions.

The petitioners argue that Art. 49B, § 42, "does nothing to define the elements of liability or damages" and therefore "completely fails to address the constitutional infirmities identified by this Court in *McCrory.*" (Petitioners brief at 9). The petitioners assert that the General Assembly's enactment of § 42 "failed to cure the defects addressed in *McCrory,* because it still effectively left it to the county to create the cause of action...." (*Id.* at 12). They state that the General Assembly cannot rectify the Article XI–A constitutional limitation on chartered counties' authority "through a thinly veiled delegation of its own legislative authority to county councils." (*Id.* at 12–13) The petitioners contend that,

"in every real sense, it is the County Council—not the General Assembly—that made the tough legislative choices and created the cause of action. Section 42 merely purports to authorize the creation of the cause of action, while expressly leaving it to the County Council to decide what will constitute actionable discrimination.

"Most fundamentally, under section 42, no cause of action exists until the relevant county decides to create it. Only where there is a local discrimination ordinance, and that ordinance prohibits the type of discrimination at issue, does a cause of action exist. Under these circumstances, section 42 is no more than an ill-conceived, and ultimately impermissible, license issued by the General Assembly to a handful of localities to do that which the Constitution forbids: legislate on non-local matters. * * * Notwithstanding section 42, the county council is still the entity truly creating the purported cause of action." (*Id.* at 13).

The petitioners also rely upon language in the *McCrory* opinion that "the creation of new judicial remedies has traditionally been done on a statewide basis" and that "[a]busive employment practices constitute a statewide problem...." *McCrory,* 319 Md. at 20, 570 A.2d at 838. Based on this language, the petitioners contend "that any judicial cause of action for discrimination should be created by the General Assembly and be available statewide." (Petitioners' brief at 11). They assert that, "despite this Court's holding [in *McCrory* ] that employment discrimination is a matter of statewide concern calling for uniform application, the General Assembly attempted, by the enactment of . . . Art. 49B, § 42, to give the county councils of Prince George's, Montgomery, and Howard counties the very power that the *McCrory* Court held that they did not have." (*Id.* at 12, 570 A.2d 834). The petitioners maintain that "the defect in section 42 is . . . that it allows each of the three named counties to legislate on a matter that is reserved to the state." (*Id.* at 21, 570 A.2d 834). They conclude "that section 42 . . . represent[s] an unconstitutional delegation of authority to the counties." (*Id.* at 23, 570 A.2d 834).

The petitioners' argument reflects a fundamental misunderstanding of Article XI–A and of this Court's decisions in *McCrory* and numerous other cases.

Article XI–A of the Maryland Constitution sets forth only one limitation upon the General Assembly's authority to enact statutes. Article XI–A, § 4, provides as follows:

> **"Section 4. General Assembly not to enact local laws on subjects covered by express powers.**
>
> "From and after the adoption of a charter under the provisions of this Article by the City of Baltimore or any County of this State, no public local law shall be enacted by the General Assembly for said City or County on any subject covered by the express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical sub-divisions of this State shall not be deemed a Local Law, within the meaning of this Act. The term 'geographical sub-division' herein used shall be taken to mean the City of Baltimore or any of the Counties of this State."

Article 49B, § 42, of the Code does not violate this provision. It is not a prohibited "local law" on two alternative grounds. First, it applies to three counties and, therefore, is not a "local law" under the express language of Article XI–A, § 4. Second, it creates a new cause of action in the circuit courts, and, under the *McCrory* case, it is not a local law for this reason.

■ The limitations upon ordinances enacted by chartered county councils, set forth in Article XI–A of the Maryland Constitution, include the following. The ordinances must be "local laws" (Article XI–A, § 3), and they must be within the "express powers" granted by the General Assembly to chartered counties (Article XI–A, §§ 2 and 3). An ordinance enacted by a chartered county must be authorized by the county's charter and must not be inconsistent with the "Public General Laws of this State" (Article XI–A, § 1). A locally-enacted ordinance may be inconsistent with state public general laws in one of three ways: 1. it could be in direct conflict

with a public general law; 2. it could be the type of ordinance which is expressly preempted by a public general law; 3. it could be impliedly preempted by public general laws because the General Assembly has intended to occupy the entire field within which the ordinance falls. *Talbot County v. Skipper,* 329 Md. 481, 487–493, 620 A.2d 880, 883–886 (1993), and cases there cited. *See also, e.g., Tyma v. Montgomery County, supra,* 369 Md. at 506, 801 A.2d at 153; *Montrose Christian School v. Walsh, supra,* 363 Md. at 579–581, 770 A.2d at 119–120; *Holiday v. Anne Arundel County,* 349 Md. 190, 209–214, 707 A.2d 829, 840–841 (1998); *Coalition v. Annapolis Lodge,* 333 Md. 359, 378–383, 635 A.2d 412, 421–423 (1994).

Sections 2–186(a)(3) and 2–222 of the Prince George's County Code do not violate the above-described Article XI-A limits upon a chartered county's legislative authority. This Court has consistently held that a chartered county ordinance limited to prohibiting discrimination in the county is a "local law," is authorized by the express powers granted by the General Assembly to chartered counties, and generally is not preempted by or otherwise inconsistent with public general laws. *See, e.g., Montrose Christian School v. Walsh, supra,* 363 Md. at 579–581, 770 A.2d at 119–120 (A Montgomery County ordinance prohibiting discrimination in employment neither conflicts with nor is otherwise preempted by public general laws); *Molesworth v. Brandon,* 341 Md. 621, 634–636, 672 A.2d 608, 614–615 (1996) (The General Assembly has not "preempted the field of employment discrimination"); *McCrory Corp. v. Fowler, supra,* 319 Md. at 20, 570 A.2d at 838 (pointing out that laws aimed at discriminatory employment practices fall within a "field [which] has not been preempted by the State, and ... home rule counties have concurrent authority" to enact such laws); *National Asphalt v. Prince George's County,* 292 Md. 75, 437 A.2d 651 (1981) (State legislation aimed at employment discrimination has not preempted the field, and Prince George's County is entitled to enact local ordinances prohibiting employment discrimination); *Montgomery Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969) (Under Article XI A of the Constitution and the Express

Powers Act, Code (1957), Art. 25A, a chartered county has the authority to enact laws for the prevention of discrimination).

■ As the above-cited cases clearly hold, a chartered county generally has the authority to prohibit discrimination occurring in the county, to define the elements of a claim by one injured by such discrimination, to provide for an adjudicatory administrative proceeding by which the injured party may obtain relief, and to provide for a traditional judicial review action in the circuit court for a party aggrieved by the final administrative decision.[8]  Consequently, there is no merit in the petitioners' complaints that the chartered counties' ordinances, rather than Art. 49B, § 42, "define the elements of liability" or "decide what will constitute actionable discrimination." (Petitioners' brief at 9, 13). Under our cases, chartered counties have authority to do this.

The constitutional defect in the Montgomery County ordinances at issue in *McCrory Corp. v. Fowler, supra,* was not that the local ordinances prohibited discrimination in the county, or defined the elements of liability, or decided what would constitute actionable discrimination. Instead, the constitutional problem was in one of the alternative *remedies* created by the Montgomery County law. In addition to administrative remedies, the Montgomery County ordinances created a new cause of action in the courts, and it was this provision which the Court in *McCrory* held was not a "local law" and thus was not authorized by Article XI–A of the Constitution. That defect has now been remedied by Art. 49B, § 42.

---

**8.** Even if an ordinance by a chartered county failed to provide for judicial review of the adjudicatory administrative decision, such review, by a mandamus, certiorari, or declaratory judgment action, would ordinarily be guaranteed under Articles 8 and 19 of the Maryland Declaration of Rights and Article IV of the Maryland Constitution. *See, e.g., Piselli v. 75th Street Medical,* 371 Md. 188, 206, 808 A.2d 508, 518–519 (2002); *Board of License Commissioners v. Corridor,* 361 Md. 403, 415, 761 A.2d 916, 922 (2000); *State v. Board of Education,* 346 Md. 633, 641–647, 697 A.2d 1334, 1338–1341 (1997), and cases there cited; *Heaps v. Cobb,* 185 Md. 372, 378–381, 45 A.2d 73, 76–77 (1945); *Hecht v. Crook,* 184 Md. 271, 280–281, 40 A.2d 673, 677 (1945).

The petitioners' reliance upon language in *McCrory,* 319 Md. at 20, 570 A.2d at 838, that "[a]busive employment practices constitute a statewide problem," is entirely misplaced. That phrase was simply the introductory language in a sentence pointing out that the General Assembly had enacted statewide anti-discrimination laws in Art. 49B of the Code. The very next sentence in the same paragraph stated (*ibid.*)

> "that the field has not been preempted by the State, and that home rule counties have concurrent authority to provide administrative remedies not in conflict with state law."

Furthermore, the statement in *McCrory* that "the creation of new judicial remedies has traditionally been done on a statewide basis," *ibid.,* does not help the petitioners' position. That was simply a statement of historical fact, underscoring the holding that the creation of new judicial causes of action was a matter for the state legislature and not for a single county council. Nothing in the *McCrory* opinion suggested that Article XI–A precludes the General Assembly from creating a new judicial cause of action effective in less than all of the State's counties.

The petitioners also criticize Art. 49B, § 42, on the ground that the judicial cause of action created by the General Assembly incorporates the substantive elements or standards from the county ordinances. Nevertheless, it is ordinarily not a constitutionally impermissible delegation of legislative authority for a legislative body to adopt a standard promulgated by a different governmental entity. In *Board of Trustees v. City of Baltimore,* 317 Md. 72, 96 n. 24, 562 A.2d 720, 731 n. 24, *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990), this Court stated:

> "In our complex system of government, state and local as well as state and federal authority unavoidably intermesh. *See, e.g., Department of Transportation v. Armacost,* 311 Md. 64, 82–83, 532 A.2d 1056 (1987) (to maintain eligibility for federal funds, General Assembly conformed state law to requirements of federal Clean Air Act); *Price v. Clawns,* 180 Md. 532, 538, 25 A.2d 672 (1942) (statute making it a

crime to ride railroad except in compliance with railroad's regulations dovetailed with federal statutes dictating substance of a railroad's regulations). As a result, a legislature may ordinarily adopt a standard promulgated by another governmental entity, even if that standard is subject to modification by the other governmental entity."

*See also, e.g., Comptroller v. SYL,* 375 Md. 78, 100–102, 825 A.2d 399, 412–413, *cert. denied,* —— U.S. ——, 124 S.Ct. 478, 157 L.Ed.2d 375 (2003), and cases there cited (state tax statute incorporates federal constitutional standards and reaches corporate income to the extent constitutionally permissible); *Mangum v. Maryland State Board of Censors,* 273 Md. 176, 187–193, 328 A.2d 283, 289–293 (1974) (state obscenity statute may constitutionally incorporate federal law definition of obscenity); *Katzenberg v. Comptroller,* 263 Md. 189, 200, 282 A.2d 465, 470 (1971) ("The State's adoption of the federal definition of income does not constitute a delegation of legislative authority").

The Court of Special Appeals correctly held that the operation of Art. 49B, § 42, combined with §§ 2–186(a)(3) and 2–222 of the Prince George's County Code, did not violate Article XI–A of the Maryland Constitution.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.*